Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiff*
*Kelly Toys Holdings, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KELLY TOYS HOLDINGS, LLC,<br><br>*Plaintiff*<br><br>v.<br><br>19885566 STORE, ANKANG AIDUOBAO ANIMATION CULTURE INDUSTRY CO., LTD., BAEBAE STORE, BAODING KAIYU ARTS & CRAFTS MANUFACTURING CO., LTD., CHINESE PLUSH TOY STORE, COMFORTABLE LIFE 1026 STORE, CZ TOY STORE, DEERBABY TOY STORE, DOLLFIGE STORE, DONGGUAN BINFA TOYS CO., LTD., DONGGUAN JUN OU TOYS CO., LTD., DONGGUAN YIKANG PLUSH TOYS CO., LTD., DONGGUAN YOURUN TOYS LTD., DONGGUAN YUANKANG PLUSH TOYS CO., LTD., DROPSHOIP TOY STORE, FASHION HELLO KITTY SECRET STORE, FASHION TRENDS STORE, FORKIDS STORE, FUN PLUSH TOY STORE, FUNFUN TOY STORE, FUZHOU ZHONGCHUANG TIMES TECHNOLOGY CO., LTD., GISELLE TOYS STORE, GUANGDONG HAYIDAI TOYS CO., LTD., GUANGZHOU KINGKONG INDUSTRIAL CO., LTD., HANGZHOU BAIXIN IM.& EXP. CO., LTD., HI TOY TRIBE STORE, HOUSE ZONE STORE, JANEDREAM BABY STORE, JINHUA HAIRONG IMPORT AND EXPORT CO., LTD., JOEANNO TOY FACTORY STORE, KI HOUSE TOY STORE, KK SMART | Civil Action No.: 22-cv-9384 (JMF)<br><br><br>**FIRST AMENDED COMPLAINT**<br><br><br>**Jury Trial Requested** |

TOY STORE, MARKET SHOP STORE, MILIBLANKET STORE, ONE-OF-A-KIND CABIN STORE, POINT ALL STORE, PROBRA OFFICIAL STORE, QINGDAO QUNZE TOYS CO., LTD., REAL INTERNATIONAL TRADING (SHANGHAI) CO., LTD., ROAD TO MUG STORE, ROMD BLANKET STORE, SHANGHAI RBIN INDUSTRY AND TRADE CO., LTD., SHANGHAI ZHEYI TRADING CO., LTD., SHENZHEN HUAMING JUN RUBBER CO., LTD., SHENZHEN OUCHENG ELECTRONIC COMMERCE CO., LTD., SHENZHEN SIRUIQI ELECTRONIC COMMERCE CO. LTD, SHIJIAZHUANG JOYCE TECHNOLOGY CO., LTD., SHOP1100006046 STORE, SHOP1100064019 STORE, SHOP1100085091 STORE, SHOP1100180251 STORE, SHOP1102064132 STORE, SHOP1102115801 STORE, SHOP1102135777 STORE, SHOP1102138263 STORE, SHOP1102156837 STORE, SHOP1102174373 STORE, SHOP1102195438 STORE, SHOP1102197245 STORE, SHOP5240333 STORE, SHOP5603037 STORE, TAIZHOU WOTONG INTERNATIONAL TRADING CO., LTD., TOY ANIME STORE, TOYFOND STORE, TOYS HEAVEN STORE, TOYSAGEYOUNG88 STORE, VA888 STORE, VGR HOME APPLIANCES STORE, WUHAN TKNOW TOYS CO., LTD., XIAMEN HOTITEM TECHNOLOGY CO., LTD., XIAOCHA TOY STORE, YANGHZOU U-TRON IMPORT & EXPORT CO., LTD. , YANGZHOU ALIJIA PLUSH TOYS CO., LTD., YANGZHOU JINRUNAN MATERNITY & BABY PRODUCTS CO., LTD., YANGZHOU MARISA TOY GIFTS CO., LTD., YANGZHOU MOVA TOYS TRADE CO., LTD., YANGZHOU STECH TOYS CO., LTD., YANGZHOU STEP TOYS & GIFTS CO., LTD., YANGZHOU STEP TOYS AND GIFTS CO., LTD., YIWU DAZZER CLOTH CO., LTD., YIWU LEO TRADING CO., LTD., YIWU QIBA TRADING FIRM, YIWU TANGAO E-COMMERCE FIRM, YIWU YIXUN TOYS CO., LTD., YIWU YIYA TOY CO., LTD., YIZHENG CITY HONGMER ELECTRONICS CO., LTD., YOOCOUR SPECIALITY STORE, YUJIAHOMEY STORE, ZHENGZHOU NUOWEN IMPORT AND EXPORT TRADE CO., LTD., ZL FENG XINGTIANXIA STORE, ALIBABA GROUP HOLDING LTD., ALIBABA HONG KONG LTD., ALIBABA.COM LTD., ALIBABA (CHINA) TECHNOLOGY CO., LTD., TAOBAO CHINA HOLDING LTD. and TAOBAO (CHINA) SOFTWARE CO., LTD.

*Defendants*

**GLOSSARY**

| Term | Definition |
|---|---|
| **Plaintiff or Kelly Toys** | Kelly Toys Holdings, LLC |
| **Merchant Defendants** | 19885566 Store, Ankang Aiduobao Animation Culture Industry Co., Ltd., BAEBAE Store, Baoding Kaiyu Arts & Crafts Manufacturing Co., Ltd., Chinese Plush Toy Store, Comfortable life 1026 Store, Cz Toy Store, DeerBaby Toy Store, Dollfige Store, Dongguan Binfa Toys Co., Ltd., Dongguan Jun Ou Toys Co., Ltd., Dongguan Yikang Plush Toys Co., Ltd., Dongguan Yourun Toys Ltd., Dongguan Yuankang Plush Toys Co., Ltd., Dropshoip Toy Store, Fashion Hello Kitty Secret Store, Fashion trends Store, ForKids Store, Fun Plush Toy Store, FunFun Toy Store, Fuzhou Zhongchuang Times Technology Co., Ltd., Giselle toys Store, Guangdong Hayidai Toys Co., Ltd., Guangzhou Kingkong Industrial Co., Ltd., Hangzhou Baixin Im.& Exp. Co., Ltd., Hi Toy Tribe Store, House Zone Store, Janedream Baby Store, Jinhua Hairong Import And Export Co., Ltd., Joeanno Toy Factory Store, ki house toy Store, KK Smart Toy Store, market Shop Store, miliblanket Store, One-of-a-kind cabin Store, Point all Store, PROBRA Official Store, Qingdao Qunze Toys Co., Ltd., Real International Trading (Shanghai) Co., Ltd., Road to Mug Store, ROMD Blanket Store, Shanghai Rbin Industry And Trade Co., Ltd., Shanghai Zheyi Trading Co., Ltd., Shenzhen Huaming Jun Rubber Co., Ltd., Shenzhen Oucheng Electronic Commerce Co., Ltd., Shenzhen Siruiqi Electronic Commerce Co. LTD, Shijiazhuang Joyce Technology Co., Ltd., Shop1100006046 Store, Shop1100064019 Store, Shop1100085091 Store, Shop1100180251 Store, Shop1102064132 Store, Shop1102115801 Store, Shop1102135777 Store, Shop1102138263 Store, Shop1102156837 Store, Shop1102174373 Store, Shop1102195438 Store, Shop1102197245 Store, Shop5240333 Store, Shop5603037 Store, Taizhou Wotong International Trading Co., Ltd., Toy Anime Store, Toyfond Store, Toys Heaven Store, ToysAgeYoung88 Store, VA888 Store, VGR Home Appliances Store, Wuhan Tknow Toys Co., Ltd., Xiamen Hotitem Technology Co., Ltd., xiaocha Toy Store, Yanghzou U-Tron Import & Export Co., LTD. , Yangzhou Alijia Plush Toys Co., Ltd., Yangzhou |

| | |
|---|---|
| | Jinrunan Maternity & Baby Products Co., Ltd., Yangzhou Marisa Toy Gifts Co., Ltd., Yangzhou Mova Toys Trade Co., Ltd., Yangzhou Stech Toys Co., Ltd., Yangzhou Step Toys & Gifts Co., Ltd., Yangzhou Step Toys And Gifts Co., Ltd., Yiwu Dazzer Cloth Co., Ltd., Yiwu Leo Trading Co., Ltd., Yiwu Qiba Trading Firm, Yiwu Tangao E-Commerce Firm, Yiwu Yixun Toys Co., Ltd., Yiwu Yiya Toy Co., Ltd., Yizheng City Hongmer Electronics Co., Ltd., Yoocour Speciality Store, YujiaHomey Store, Zhengzhou Nuowen Import And Export Trade Co., Ltd. and ZL Feng xingtianxia Store |
| **Alibaba Group** | Alibaba Group Holding Ltd., Alibaba Hong Kong Ltd., Alibaba.com Ltd., Alibaba (China) Technology Co., Ltd., Taobao China Holding Ltd. and Taobao (China) Software Co., Ltd. |
| **Defendants** | Merchant Defendants and Alibaba Group |
| **Alibaba** | Alibaba.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Merchant Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York, and provides services in participation with the same |
| **AliExpress** | Aliexpress.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Merchant Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York, and provides services in participation with the same |
| **Alibaba Platforms** | Alibaba, AliExpress, 1688.com, Taobao.com and Tmall.com |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, NY 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *ex parte* application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Merchant Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not |

| | |
|---|---|
| | issue; 4) an order authorizing bifurcated and alternative service; and 5) an order authorizing expedited discovery |
| **Kelly Dec.** | Declaration of Jonathan Kelly in Support of Plaintiff's Application |
| **Nastasi Dec.** | Declaration of Gabriela N. Nastasi in Support of Plaintiff's Application |
| **Squishmallows Application** | U.S. Trademark Serial Application No.: 90/676,140 for "ORIGINAL SQUISHMALLOWS," for goods in Class 28 |
| **Squishmallows Registrations** | U.S. Trademark Registration Nos.: 6,457,232 for "SQUISHMALLOWS" for goods in Class 28; 5,454,574 for "SQUISHMALLOW" for goods in Class 28; 6,137,521 for "FLIP A MALLOWS" for goods in Class 28; 5,962,289 for "MYSTERY SQUAD" for goods in Class 28; 2,029,047 for "KELLYTOY" for goods in Class 28; and 6,654,108 for "SQUISHMALLOWS HUG MEES" for goods in Class 28 |
| **Squishmallows Marks** | The marks covered by the Squishmallows Registrations and Squishmallows Application |
| **Squishmallows Works** | The works covered by the U.S. copyright registrations listed in Exhibit C to the Complaint |
| **Squishmallows Products** | A line of loveable buddies made with a super soft, marshmallow-like texture that come in a variety of sizes from 3.5-inch clip-ons to extra-large 24 inch plush toys, and have expanded to other styles including Hug Mees, Stackables, Mystery Squad and Flip-A-Mallows. |
| **Counterfeit Products** | Products bearing or used in connection with the Squishmallows Marks and/or Squishmallows Works, and/or products in packaging and/or containing labels and/or hang tags bearing the Squishmallows Marks and/or Squishmallows Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Squishmallows Marks and/or Squishmallows Works and/or products that are identical or confusingly or substantially similar to the Squishmallows Products |
| **Infringing Listings** | Merchant Defendants' listings for Counterfeit Products |
| **Merchant User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as the Alibaba Platforms, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Merchant Defendants, their |

| | respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
|---|---|
| **Merchant Storefronts** | Any and all Merchant User Accounts through which Merchant Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Merchant Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Defendants' Assets** | Any and all money, securities or other property or assets of Merchant Defendants (whether said assets are located in the U.S. or abroad) |
| **Merchant Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Merchant Defendants or any Merchant User Accounts or Merchant Storefront(s) (whether said accounts are located in the U.S. or abroad) |
| **Financial Institutions** | PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), Alipay.com Co., Ltd. and Ant Financial Services Group (collectively "AliPay") and PingPong Global Solutions, Inc. ("PingPong") |
| **Service Providers** | Online marketplace platforms, including, without limitation, the Alibaba Platforms, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Merchant Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

Plaintiff by and through its undersigned counsel, alleges as follows:[1]

## NATURE OF THE ACTION

1.      This action (the "Action") involves claims for direct trademark infringement of Plaintiff's federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq*.; counterfeiting of Plaintiff's federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c); trademark infringement of Plaintiff's unregistered trademark in violation of 15 U.S.C. § 1125; false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); contributory trademark infringement and counterfeiting in violation of 15 U.S.C. §§ 1114, 1116(d) and 1117(b)-(c); direct copyright infringement of Plaintiff's federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*; contributory and vicarious copyright infringement of Plaintiff's federally registered Squishmallows Works in violation of the Copyright Act; and related state and common law claims, arising from Merchant Defendants' direct, and Alibaba Group's contributory and vicarious infringement of the Squishmallows Marks and Squishmallows Works, as further set forth herein.

## JURISDICTION AND VENUE

2.      This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. and the Copyright Act, 17 U.S.C. §§ 101 *et seq.*; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.

dollars.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or controversy.

3.    Personal jurisdiction exists over Defendants in New York pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York, and/or derive substantial revenue from their business transactions in New York and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in New York such that Defendants should reasonably expect such actions to have consequences in New York, for example:

a.    Upon information and belief, Merchant Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through accounts with online marketplace platforms such as Alibaba and/or AliExpress, as well as any and all as yet undiscovered Merchant User Accounts, through which consumers in the U.S., including New York, can view one or more of the Merchant Defendants' Merchant Storefronts, uses to communicate with the Merchant Defendants regarding their listings for Counterfeit Products and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

b.    Upon information and belief, the Merchant Defendants are sophisticated sellers, each operating one or more commercial businesses through their respective Merchant User

2

Accounts, using their Merchant Storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Counterfeit Products at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically New York.

c.    Upon information and belief, Alibaba Group regularly conducts, transacts and/or solicits business in the U.S. and New York specifically and derives substantial revenue from goods and/or services used and/or consumed in the U.S. and New York specifically in connection with the unlawful conduct complained of herein, which has caused, and continues to cause, injury to Plaintiff in the U.S. and in New York.

d.    Upon information and belief, Alibaba Group targets customers in the United States, including customers located in New York, through online marketing and advertising.

e.    Upon information and belief, all Merchant Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Address.

f.    Upon information and belief, all Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

g.    Upon information and belief, all Defendants are aware of Plaintiff, its Squishmallows Products, Squishmallows Marks and Squishmallows Works, and are aware that their illegal counterfeiting and infringing actions alleged herein are likely to cause injury to Plaintiff in the U.S. and specifically, in New York.

h.    On May 6, 2014, Alibaba Group filed its Form F-1 with the U.S. Securities and Exchange Commission for an Initial Public Offering of its shares in the U.S. to be listed on

the New York Stock Exchange ("Form F-1").

        i.    Alibaba Group operates the Alibaba Platforms, including Alibaba and AliExpress, which facilitate the offering for sale and sale Counterfeit Products, with the knowledge and intent that such Counterfeit Products (i) will ultimately be sold to consumers throughout the U.S., including in New York; (ii) cause substantial consumer confusion among consumers throughout the U.S., including in New York; and (iii) cause harm throughout the U.S., including in New York.

4.    Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact and/or solicit business in New York.

## THE PARTIES

5.    Plaintiff is a limited liability company with a principal place of business at 4811 South Alameda Street, Los Angeles, CA 90058.

6.    Upon information and belief, the Merchant Defendants are merchants on the Alibaba and AliExpress online marketplace platforms, through which the Merchant Defendants offer for sale and/or sell Counterfeit Products, with a principal place of business at the addresses identified, if any, in the screenshots of the Merchant Defendants' Merchant Storefronts in **Exhibit D**.

7.    Upon information and belief, Alibaba Group Holding Ltd. is organized and exists under the laws of the Cayman Islands, with its principal address located at 969 West Wen Yi Road Yu Hang District Hangzhou, 311121, China. Alibaba Group Holding Ltd. has a U.S. registered agent for service of process at the following address: Corporation Service Company, 1180 Avenue of the Americas, Suite 210, New York, New York 13306.[2]

8.    Upon information and belief, Alibaba.com Hong Kong Ltd. is organized and exists under

---

[2] F-1 at p. 9.

the laws of Hong Kong, with its principal place of business located at 26/F Tower One, Times Square, 1 Matheson Street, Causeway Bay, Hong Kong.

9.    Upon information and belief, Alibaba.com Ltd. is organized and exists under the laws of the Cayman Islands, with its principal address located at 699 Wang Shang Road, Binjiang District, Hangzhou 310052, China.

10.    Upon information and belief, Alibaba (China) Technology Co., Ltd. is organized and exists under the laws of China, with its principal address located at 699 Wang Shang Road, Binjiang District, Hangzhou 310052, China.

11.    Upon information and belief, Taobao China Holding Ltd. is organized and exists under the laws of Hong Kong, with its principal address located at 26/F Tower One, Times Square, 1 Matheson Street, Causeway Bay, Hong Kong.

12.    Upon information and belief, Taobao (China) Software Co., Ltd. is organized and exists under the laws of China, with its principal address located at Jingfeng Village, Wuchang Subdistrict, Yuhang District, Hangzhou Zhejiang 310013, China.

13.    Alibaba Group operates as a self-described "ecosystem."[3]

14.    Upon information and belief, Alibaba Group Holding, Ltd., Alibaba.com Hong Kong Ltd., Alibaba.com Ltd., Alibaba (China) Technology Co., Ltd., Taobao China Holding Ltd. and Tabao (China) Software Co., Ltd. are related and/or affiliated companies.

15.    Upon information and belief, Alibaba Group owns, controls and/or operates the Alibaba Platforms, a network of e-commerce websites, including but not limited to, Alibaba and AliExpress, which connect sellers to buyers;  www.1688.com, a Chinese e-commerce marketplace for domestic trade in China; and www.taobao.com, a Chinese online retail website.

---

[3] F-1 at p. 1.

## GENERAL ALLEGATIONS

### Plaintiff and Its Well-Known Squishmallows Products

16.     Plaintiff is one of the world's most influential, leading manufacturers and distributors of high-quality plush toys and gifts, and is known for its best-selling brands, including Pillow Chums, Kellybaby and Kellypet.

17.     Plaintiff sells its Kelly Toys Products in major retailers, department stores and online marketplaces, including, but not limited to: Walmart, Justice, Target and Amazon.

18.     One of the most popular Kelly Toys Brands is Squishmallows, a line of loveable buddies made with a super soft, marshmallow-like texture that come in a variety of sizes from 3.5-inch clip-ons to extra-large 24 inch plush toys. The Squishmallows Products have expanded to other styles including Hug Mees, Stackables, Mystery Squad and Flip-A-Mallows. Images of the Squishmallows Products are attached hereto as **Exhibit A**.

19.     Since their debut in 2017, over 200 million Squishmallows Products have been sold worldwide.[4]

20.     In 2020, the Squishmallows Products were awarded "Best Toy of the Year" by Learning Express.[5]

21.     Recently, Squishmallows won the 2022 "Toy of the Year" award as well as the "Plush Toy of the Year" at the Toy of the Year awards ceremony.[6]

22.     The Squishmallows Products are sold by major U.S. retailers and e-commerce sites, such as Amazon, Target and Walmart.

---

[4] Mark Faithfull, *Squishmallows: Going Viral, Warren Buffet And 2022's Must-Have Christmas Toy*, FORBES (Dec. 13, 2022), https://www.forbes.com/sites/markfaithfull/2022/12/13/squishmallows-going-viral-warren-buffett-and-2022s-must-have-christmas-toy/?sh=6330844b22ad.
[5] aNb Media, *Squishmallows Named 2020 Best Toy of the Year by Learning Express*, ANB MEDIA, INC. (Oct. 2020), https://www.anbmedia.com/news/2020/10/squishmallows-named-2020-best-toy-of-the-year-by-learning-express/.
[6] Tessa Clayton, *The Toy Foundation announces 2022 Toy of the Year Award winners*, TOYNEWS (Feb. 21, 2022), https://www.toynews-online.biz/2022/02/21/the-toy-foundation-announces-2022-toy-of-the-year-award-winners/.

23.     The Squishmallows Products typically retail for between $7.99-44.99.

24.     While Kelly Toys has gained significant common law trademark and other rights in its Squishmallows Products, through its and/or its predecessor's use, advertising and promotion, Kelly Toys has also protected its valuable rights by filing for and/or obtaining federal trademark registrations.

25.     For example, Kelly Toys is the owner of the Squishmallows Registrations (i.e., U.S. Trademark Registration Nos. 6,457,232 for "SQUISHMALLOWS" for goods in Class 28; 6,137,521 for "FLIP A MALLOWS" for goods in Class 28; 5,454,574 for "SQUISHMALLOW" for goods in Class 28; 5,962,289 for "MYSTERY SQUAD" for goods in Class 28; 2,029,047 for "KELLYTOY" for goods in Class 28; and 6,654,108 for "SQUISHMALLOWS HUG MEES" for goods in Class 28). Kelly Toys also applied for the registration of the Squishmallows Application (i.e. U.S. Trademark Serial Application No. 90/676,140 for "ORIGINAL SQUISHMALLOWS" for goods in Class 28).  Copies of the Squishmallows Registrations and Squishmallows Application are attached hereto as **Exhibit B** and incorporated herein by reference.[7]

26.     The Squishmallows Marks are currently in use in commerce in connection with Squishmallows Products.  The Squishmallows Marks were first used in commerce on or before the dates of first use as reflected in the Squishmallows Registrations attached hereto as part of **Exhibit B**.

27.     In addition, Kelly Toys is also the owner of registered copyrights in and related to the Squishmallows Products.

28.     For example, Kelly Toys owns the Squishmallows Works, and the U.S. copyright registrations covering the same, which are listed in **Exhibit C**.[8]

---

[7] Although two of the Squishmallows Registrations list Plaintiff's predecessor, Kellytoy Worldwide, Inc. on the certificates of registration, the assignments on file with the United States Patent and Trademark Office (the "USPTO") unequivocally evidence that Plaintiff is in fact the current true and correct owner of all of the Squishmallows Registrations.  True and correct copies of the trademark assignments, as filed with the USPTO, are included as part of **Exhibit B**.
[8] Although the registrations for the Squishmallows Works also list Plaintiff's predecessor Kellytoy Worldwide, Inc. as the copyright claimant, Kellytoy Worldwide, Inc. assigned all rights in and to the Squishmallows Works to Kelly Toys, and Plaintiff is in fact the true and correct owner thereof.

29.     The success of the Squishmallows Products is due in part to Plaintiff and its predecessor's marketing and promotional efforts.  These efforts currently include advertising and promotion through social media, the Squishmallows' website (available at https://squishmallows.com/) and other advertising, among other efforts domestically and abroad, including in New York.

30.     Plaintiff's success is also due to its use of the highest quality materials and processes in making the Squishmallows Products, which meet or exceed U.S. standards.

31.     Additionally, Plaintiff owes a substantial amount of the success of the Squishmallows Products to their consumers and word-of-mouth buzz that its consumers have generated.

32.     Plaintiff and its predecessor's efforts, the quality of Squishmallows' products and the word-of-mouth buzz generated by their consumers, the Squishmallows Marks, Squishmallows Works and Squishmallows Products have become prominently placed in the minds of the public.  Members of the public have become familiar with the Squishmallows Marks, Squishmallows Works and Squishmallows Products and have come to associate them exclusively with Plaintiff.  Plaintiff has acquired a valuable reputation and goodwill among the public as a result of such associations.

33.     Plaintiff has gone through great lengths to protect its interests in the Squishmallows Marks, Squishmallows Works and Squishmallows Products.  No one other than Plaintiff is authorized to manufacture, import, export, advertise, offer for sale or sell any goods utilizing the Squishmallows Marks and Squishmallows Works without the express permission of Plaintiff.

**Alibaba Group and Merchant Defendants' Merchant User Accounts**

34.     Alibaba and AliExpress, which are owned, controlled and operated by Alibaba Group, are online marketplace and e-commerce platforms that allow manufacturers, wholesalers and other third-party merchants, like Merchant Defendants, to advertise, distribute, offer for sale, sell and ship their wholesale and retail products originating from China directly to consumers worldwide and specifically to consumers residing in the U.S., including New York.

8

35.     As a leader in China's e-commerce and digital retail market, Alibaba Group, via Alibaba and AliExpress, has generated hundreds of billions in sales worldwide. International markets, including the U.S., make up a significant percentage of sales made on Alibaba and AliExpress.  For example, in 2016, revenue from international retail sales grew by 25% on AliExpress to $342 million and 15% on Alibaba to $841 million.[9]

36.     In the fiscal year ending on March 31, 2021, Alibaba's revenue was $109.48 billion, an increase of 41% year-over-year.[10]

37.     The press reported that the growth in sales on AliExpress resulted from an increase in the number of buyers, particularly from the U.S., as well as other larges countries like Russia and Brazil.[11]

38.     Additionally, according to Business Insider, excluding China, the U.S. was among the top five countries with packages coming from the Alibaba Platforms on "Singles' Day" (often compared to the U.S.'s Cyber Monday) in 2015, which resulted in over $14 billion in sales in one day.[12]

39.     In 2021, Alibaba Group, via Alibaba, set a new Singles Day record with $84.5 billion in sales across the eleven (11) day event.[13]

40.     Alibaba Group declined to share its total sales for Singles Day 2022; however, it indicated that sales were "in line" with the $84.5 billion reported in 2021.[14]

---

[9] See Frank Tong, *Alibaba's annual web sales easily surpass U.S. e-retail sales,* DIGITALCOMMERCE360.COM (May 5, 2016), https://www.internetretailer.com/2016/05/05/alibabas-annual-web-sales-easily-surpass-us-e-retail-sales.

[10] *Alibaba Group Announces March Quarter and Full Fiscal Year 2021 Results,* SEC.GOV (May 13, 2021) https://www.sec.gov/Archives/edgar/data/1577552/000110465921065916/tm2116252d1_ex99-1.htm

[11] See Frank Tong, *An Alibaba site sells $4.5 billion in one year to consumers outside of China,* DIGITALCOMMERCE360.COM (Sept. 11, 2014), https://www.internetretailer.com/2014/09/11/alibaba-site-sells-45-billion-one-year-consumers-outs.

[12] *See* Bob Bryan, *Alibaba just proved it's more than just some Chinese company,* BUSINESS INSIDER (Nov. 15, 2015), http://www.businessinsider.com/alibaba-international-expansion-201f-1.

[13] Dan Berthiaume, *Alibaba sets new Singles Day record with $84.5 billion in sales,* CHAIN STORE AGE (Nov. 11, 2021), https://chainstoreage.com/alibaba-sets-new-singles-day-record-845-billion-sales.

[14] Evelyn Cheng, *Alibaba says 15% of China delivery areas were disrupted during Singles Day shopping festival,* CNBC (Nov. 17, 2022) https://www.cnbc.com/2022/11/18/alibaba-says-15percent-of-china-delivery-areas-disrupted-during-singles-day.html.

41.    As addressed in the Wall Street Journal, Fortune and the New York Times,[15] and as reflected in the federal lawsuits filed against sellers offering for sale and selling infringing and/or counterfeit products on Alibaba and AliExpress,[16] an astronomical number of counterfeit and infringing products are offered for sale and sold on Alibaba and AliExpress, as well as other online marketplace platforms, at a rampant rate.

42.    In February of 2022, the Office of the United States Trade Representative ("USTR") added AliExpress to its list of 2021 "notorious markets", which are "markets that reportedly facilitate substantial trademark counterfeiting."[17]

43.    On January 31, 2023, the USTR released its 2022 Review of Notorious Markets for Counterfeiting and Piracy, and AliExpress was again designated a "notorious market".[18]  The USTR specifically noted that a "key concern of right holders is that penalties for repeat infringers do not stop counterfeit sellers on AliExpress from remaining on the market, such as by operating multiple accounts.[19]

44.    Merchant Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their

---

[15] *See* Kathy Chu, *Alibaba Vows Crackdown on Fakes Amid Trade Group Controversy*, WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-vows-crackdown-on-fakes-amid-trade-group-controversy-1463127605?; Scott Cendrowski, *Chinese Regulator Again Calls Out Alibaba for Counterfeit Goods*, FORTUNE (Aug. 10, 2016), http://fortune.com/2016/08/11/alibaba-counterfeit-goods-regulator/; *see also* Kathy Chu, *Alibaba Suspends From Anticounterfeiting Group*, WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-suspended-from-anticounterfeiting-group-1463170527?tesla=y; Michael Schuman, *A Small Table Maker Takes On Alibaba's Flood of Fakes*, N.Y. TIMES (Mar. 18, 2017), https://www.nytimes.com/2017/03/18/business/alibaba-fake-merchandise-e-commerce.html.
[16] *See* Kathy Chu, *Luxury brands get tougher with counterfeiters – and Alibaba*, MARKETWATCH (Aug. 16, 2016), http://www.marketwatch.com/story/luxury-brands-get-tough-with-counterfeiters-2016-08-16-91031611; Gilian Wong, *Alibaba Sued Over Alleged Counterfeits*, WALL STREET JOURNAL (May 17, 2015), http://www.wsj.com/articles/alibaba-sued-over-alleged-counterfeits-1431877734; Scott Cendrowski, *There's no end in sight for Alibaba's counterfeit problem*, FORTUNE (May 18, 2015), http://fortune.com/2015/05/18/theres-no-end-in-sight-for-alibabas-counterfeit-problem/.
[17] Michelle Toh, *The US accuses Tencent and Alibaba of letting sellers traffic fake goods*, CNN (Feb. 18, 2022) https://www.cnn.com/2022/02/17/business/china-tencent-alibaba-notorious-markets-list-intl-hnk/index.html.
[18] *USTR Releases 2022 Review of Notorious Markets for Counterfeiting and Piracy*, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE (Jan. 31, 2023), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2023/january/ustr-releases-2022-review-notorious-markets-counterfeiting-and-piracy.
[19] *Id.*

Merchant User Accounts and on their Merchant Storefronts on Alibaba and AliExpress, as well as potentially yet undiscovered additional online marketplace platforms.

45.    Through their Merchant Storefronts, the Merchant Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and target and ship such products to customers located in the U.S., including New York, and throughout the world.

46.    Merchant Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities in price, description of the goods offered and of the Counterfeit Products themselves offered for sale.

47.    The Merchant Defendants are in constant communication with each other and regularly participate in online chatroom discussions involving illegal counterfeiting activities, pending litigation and potential new lawsuits.

48.    Merchant Defendants' Wrongful and Infringing Conduct Particularly in light of Plaintiff's success with its Squishmallows Products, as well as the reputation they have gained, Plaintiff and its Squishmallows Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiff has amassed in its Squishmallows Products, Squishmallows Marks and Squishmallows Works and Plaintiff investigates and enforces against such activities.

49.    As part of these efforts, Plaintiff authorized Epstein Drangel to investigate and research manufacturers, wholesalers, retailers and/or other merchants offering for sale and/or selling Counterfeit Products on Alibaba and AliExpress.

50.    Through Epstein Drangel's investigative and enforcement efforts, Plaintiff learned of the Merchant Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale

and/or selling Counterfeit Products to U.S. consumers, including those located in the state of New York, through their Merchant User Accounts and Merchant Storefronts. Printouts of listings for Counterfeit Products from the Merchant User Accounts and Merchant Storefronts are included in **Exhibit D** attached hereto and incorporated herein by reference.

51.    Merchant Defendants are not, and have never been, authorized by Plaintiff or any of its authorized agents, authorized licensees or authorized distributors to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the Squishmallows Products or to use the Squishmallows Marks and/or Squishmallows Works, or any marks and/or artwork that are confusingly or substantially similar to the Squishmallows Marks and Squishmallows Works.

52.    Merchant Defendants' Counterfeit Products are nearly indistinguishable from Plaintiff's Squishmallows Products, only with minor variations that no ordinary consumer would recognize.

53.    During its investigation, Epstein Drangel identified Merchant Defendants as offering for sale and/or selling Counterfeit Products and specified a shipping address located at the New York Address and verified that each Defendant provides shipping to the New York Address. Screenshots of the checkout pages for the Counterfeit Products and pages from Merchant Defendants' Merchant Storefronts reflecting that Merchant Defendants ship the Counterfeit Products to the New York Address are included in **Exhibit D**.

54.    Epstein Drangel confirmed that each Merchant Defendant is currently offering for sale and/or selling Counterfeit Products through their respective Merchant User Accounts and/or Merchant Storefronts, accepting payment for such Counterfeit Products in U.S. Dollars through various payment processing services and that each Merchant Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including to customers located in New York. Epstein Drangel's findings are supported by Merchant Defendants' listings for Counterfeit Products and/or the checkout

pages for the Counterfeit Products, which are included in **Exhibit D**.

55.    For example, below on the left is an image of one of Plaintiff's Squishmallows Products. Depicted further below is a listing for Merchant Defendant Shop5603037 Store's Counterfeit Product ("Shop5603037 Store Infringing Listing" and "Shop5603037 Store Counterfeit Product," respectively). The Shop5603037 Store Infringing Listing appears on Merchant Defendant Shop5603037 Store's Merchant Storefront, https://www.aliexpress.com/store/1101373386, and offers the Shop5603037 Store Counterfeit Product for $7.20 per item, using, featuring and/or incorporating one or more of the Squishmallows Marks and/or Squishmallows Works and/or confusingly or substantially similar marks or artwork in the listing title "2022 Squishmallowing Plush Toy 20CM Bee Cow Salamander Unihorn Pig Soft Stuffed Animal Pillow Doll Children Room Decoration Gift" (emphasis added).  Further, the Shop5603037 Store Counterfeit Product is virtually identical to one of Plaintiff's Squishmallows Products and features and/or incorporates one or more of the Squishmallows Marks and/or Squishmallows Works.  There is no question that the Shop5603037 Store Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Squishmallows Products or that the Shop5603037 Store Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of one or more of the Squishmallows Marks and/or Squishmallows Works:

|  **Squishmallows Product**  |  **Merchant Defendant's Counterfeit Product**  |
| :---: | :---: |
|  |  |

56.    By way of another example, below on the left is an image of one of Plaintiff's Squishmallows Products. Depicted further below is a listing for Merchant Defendant Toy Anime Store's Counterfeit Product ("Toy Anime Store Infringing Listing" and "Toy Anime Store Counterfeit Product," respectively). The Toy Anime Store Infringing Listing appears on Merchant Defendant Toy Anime Store's Merchant Storefront, https://www.aliexpress.com/store/1101845319, and offers the Toy Anime Store Counterfeit Product for $10.07 per item, using, featuring and/or incorporating one or more of the Squishmallows Marks and/or Squishmallows Works and/or confusingly or substantially similar marks or artwork in the listing title "2022 **Squishmallow**ing Plush Toy 20CM Bee Cow Salamander Unihorn Pig Soft Stuffed Animal Pillow Doll Children Room Decoration Gift" (emphasis added). Further, the Toy Anime Store Counterfeit Product is virtually identical to one of Plaintiff's Squishmallows Products and features and/or incorporates one or more of the Squishmallows Marks and/or Squishmallows Works. There is no question that the Toy Anime Store Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Squishmallows Products or that the Toy Anime Store Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of one or more of the Squishmallows Marks and/or Squishmallows Works:

| **<u>Squishmallows Product</u>** | **<u>Merchant Defendant's Counterfeit Product</u>** |
|:---:|:---:|
|  |  |

57.    As another example, below on the left is an image of one of Plaintiff's Squishmallows

Products.  Depicted further below is a listing for Merchant Defendant ZL Feng xingtianxia Store's Counterfeit Product ("ZL Feng xingtianxia Store Infringing Listing" and "ZL Feng xingtianxia Store Counterfeit Product," respectively).  The ZL Feng xingtianxia Store Infringing Listing appears on Defendant ZL Feng xingtianxia Store's Merchant Storefront, https://www.aliexpress.com/store/1101303150, and offers the ZL Feng xingtianxia Store Counterfeit Product for $4.11-$30.03 per item (depending on the quantity purchased), using, featuring and/or incorporating one or more of the Squishmallows Marks and/or Squishmallows Works and/or confusingly or substantially similar marks or artwork in the listing title "40/20cm **Squishmallow**ed Plush Toys Kawaii Cows Dinosaur Frog Stuffed Animal Baby Dolls Soft Pillow Children Girls Christmas Gifts" (emphasis added).  Further, the ZL Feng xingtianxia Store Counterfeit Product is virtually identical to one of Plaintiff's Squishmallows Products and features and/or incorporates one or more of the Squishmallows Marks and/or Squishmallows Works.  There is no question that the ZL Feng xingtianxia Store Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Squishmallows Products or that the ZL Feng xingtianxia Store Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of one or more of the Squishmallows Marks and/or Squishmallows Works:

|  **Squishmallows Product** | **Merchant Defendant's Counterfeit Product** |
|---|---|
|  |  |

58.    By these dealings in Counterfeit Products (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products), the Merchant Defendants violated Plaintiff's exclusive rights in the Squishmallows Marks and/or Squishmallows Works, and have used marks and/or artwork that are confusingly similar to, identical to, substantially similar to and/or constitute counterfeiting and/or infringement of the Squishmallows Marks and/or Squishmallows Works in order to confuse consumers into believing that such Counterfeit Products are the Squishmallows Products and aid in the promotion and sales of their Counterfeit Products.  The Merchant Defendants' conduct began long after Plaintiff's adoption and use of the Squishmallows Marks and/or Squishmallows Works, after Plaintiff obtained a federal registration in the Squishmallows Marks and Squishmallows Works, as alleged above, and after Plaintiff's Squishmallows Products, Squishmallows Marks and Squishmallows Works became well-known to the purchasing public.

59.    Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, the Merchant Defendants had knowledge of Plaintiff's ownership of the Squishmallows Marks and Squishmallows Works, of the fame and incalculable goodwill associated therewith and of the popularity and success of the Squishmallows Products, and in bad faith adopted the Squishmallows Marks and/or Squishmallows Works.

60.    Merchant Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, the Squishmallows Marks, Squishmallows Works and Squishmallows Products.

61.    Merchant Defendants' dealings in Counterfeit Products, as alleged herein, has caused, and will continue to cause confusion, mistake, economic loss, and has, and will continue to deceive

consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff.

62.    By engaging in these actions, the Merchant Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: infringed and counterfeited the Squishmallows Marks and/or Squishmallows Works, committed unfair competition and unfairly and unjustly profited from such activities at Plaintiff's expense.

63.    Unless enjoined, the Merchant Defendants will continue to cause irreparable harm to Plaintiff.

### Alibaba Group's Wrongful and Infringing Conduct

64.    Alibaba Group was made aware of Plaintiff's Squishmallows Marks and Squishmallows Works, in April of 2021, at the latest, when Plaintiff brought its first lawsuit against sellers on Alibaba and AliExpress for violating Plaintiff's Squishmallows Marks and Squishmallows Works.[20].

65.    Since April of 2021, Plaintiff has filed six (6) lawsuits against sellers on Alibaba and AliExpress for violating Plaintiff's Squishmallows Marks and Squishmallows Works.[21]

66.    Alibaba Group was made aware of several Merchant Defendants named in this action, and their specific infringing and counterfeiting activities, when they were named in Previous Actions. Specifically, prior to being named in this lawsuit, Merchant Defendant Chinese Plush Toy was named in *Squishmallows III*, Merchant Defendant Dongguan Yikang Plush Toys Co., Ltd. was named in

---

[20] *See*, *Kelly Toys Holdings, LLC v. 27955068 Store, et al.*, Case No. 21-cv-3081 (DLC) (S.D.N.Y. 2021).
[21] *See*, *Kelly Toys Holdings, LLC v. 27955068 Store, et al.*, Case No. 21-cv-3081 (DLC) (S.D.N.Y. 2021) ("*Squishmallows I*"); *Kelly Toys Holdings, LLC v. Baoding Mi Xiaomei Trading Co., Ltd., et al.*, Case No. 21-cv-6029 (LGS) (S.D.N.Y. 2021) ("*Squishmallows II*"); *Kelly Toys Holdings, LLC v. alialialill store, et al.*, Case No. 21-cv-8434 (AKH) (S.D.N.Y. 2021) ("*Squishmallows III*"); *Kelly Toys Holdings, LLC v. Children 777 Store, et al.*, Case No. 22-cv-1857 (ALC) (S.D.N.Y. 2022) ("*Squishmallows IV*"); *Kelly Toys Holdings, LLC v. 880925 Store, et al.*, Case No. 22-cv-3737 (JPO) (S.D.N.Y. 2022) ("*Squishmallows V*") (hereinafter collectively referred to as "Previous Actions").

*Squishmallows II*, Merchant Defendant FunFun Toy Store was named in *Squishmallows I*, Merchant Defendant *Jinhua Hairong Import And Export Co., Ltd.* was named in *Squishmallows II*, *Squishmallows IV* and *Squishmallows V*, Merchant Defendant Joeanno Toy Factory Store was named in *Squishmllows V*, Merchant Defendant Qingdao Qunze Toys Co., Ltd. was named in *Squishmallows I* and *Squishmallows II* and Merchant Defendant Yangzhou Marisa Toy Gifts Co., Ltd. was named in *Squishmallows II* and *Squishmallows III*.

67.    In each of the Previous Actions, a Temporary Restraining Order and Preliminary Injunction (and in three (3) of the Previous Actions, a Final Default Judgment and Permanent Injunction Order) were entered, which ordered Alibaba Group to *inter alia* cease providing services to Merchant Defendants on Alibaba and AliExpress, including without limitation, services relating to the continued operation of Merchant User Accounts and Merchant Storefronts.  Alibaba Group was served with each and every order entered in the Previous Actions, which identified, with specificity, each and every Merchant Defendant in each case.

68.    Alibaba Group requires Plaintiff to pay $25.00 (recently raised to $40.00) per Defendant for processing of any temporary restraining order.

69.    Despite being made specifically aware of many defendants, including the Merchant Defendants identified above, and being specifically directed by this Court on numerous occasions to restrain all Merchant Defendants' Merchant Storefronts, Alibaba Group continued to allow merchants, including the specifically identified Merchant Defendants, to continue to sell Counterfeit Products.

70.    Alibaba Group has a "three-strike policy" for Alibaba, which states that where a seller engages in three "serious infringements", the penalty is account termination ("Three Strike Policy").[22]

---

[22] *Enforcement Actions for Intellectual Property Rights Infringements Claims on Alibaba.com*, ALIBABA.COM, (Nov. 1, 2017), https://rulechannel.alibaba.com/icbu?type=detail&ruleId=2043&cId=763#/rule/detail?cId=763&ruleId=2043.

Alibaba Group has a similar Three Strike Policy for AliExpress.[23]  Upon information and belief, Alibaba Group has similar one to three strike policies for Taobao.com, Tmall.com and 1688.com.[24]

71.    On April 14, 2022, Epstein Drangel provided Alibaba Group's outside counsel with a list of Alibaba Group's Three Strike Policy violators, namely, fifty-five (55) merchants that had violated three (3) or more injunction orders entered by this Court in the Previous Actions (among other actions) and requested that their Merchant Storefronts be restrained, as they should have been pursuant to prior court orders in the Previous Actions (among other actions), to prevent these merchants from selling products that infringed Plaintiff's Squishmallows Marks and Squishmallows Works, as well as other brands' intellectual property rights ("April 14, 2022 Communication").

72.    Three of the Merchant Defendants named in this Action, Jinhua Hairong Import & Export Co., Ltd., Qingdao Qunze Toys Co., Ltd. and Yangzhou Marisa Toy Gifts Co., Ltd. were named in the Previous Actions and also specifically included in the April 14, 2022 Communication.

73.    On May 5, 2022, Epstein Drangel sent a subsequent email to outside counsel for Alibaba Group indicating that Merchant Defendant Dongguan Yikang Plush Toys Co., Ltd. was a repeat offender, which had been named in three (3) or more injunction orders, and was in violation of Alibaba Group's Three Strike Policy ("May 5, 2022 Communication").

74.    On November 14, 2022, the Court in this Action granted Plaintiff's Application and entered the Temporary Restraining Order ("TRO").

75.    On November 14, 2022, in accordance with the alternative methods of service authorized by the TRO, Epstein Drangel served the TRO on Alibaba Group.

---

[23] *Update of Enforcement Actions for Intellectual Property Rights (IPR) Infringement Claims on AliExpress*, ALIEXPRESS.COM,                                    (Mar.                    4,                    2021), https://sell.aliexpress.com/zh/__pc/77Y4QdcvjD.htm#:~:text=AliExpress%20has%20the%20right%20to,(iv)%20terminati on%20of%20accounts.

[24]    *Alibaba    Intellectual    Property    Rights    Protection    Handbook*,    available    at http://download.taobaocdn.com/freedom/37886/pdf/Alibaba-Intellectual-Property-Rights-Protection-Handbook-EN.pdf (last accessed Feb. 1, 2023).

76.     On November 15, 2022, Epstein Drangel wired $2,250.00 ($25.00 x 90 Merchant Defendants) to Alibaba Group for processing of the TRO in this Action.

77.     On November 24, 2022, Alibaba Group emailed Epstein Drangel to request copies of the Squishmallows Works and a copy of the Complaint.

78.     On November 28, 2022, Epstein Drangel provided Alibaba Group with a link containing the requested documents and reminded Alibaba Group that the TRO requires that Alibaba Group restrain Merchant Defendants' Merchant Storefronts, not just simply remove Merchant Defendants' Infringing Listings.

79.     Alibaba Group has previously requested more detailed information and documentation from Epstein Drangel.  For example, on March 16, 2022 in connection with one of the Previous Actions, Alibaba Group asked Epstein Drangel for "the image of copyrighted works so that we can compare and identify infringement. For example, the 'Squishmallows Works' copyrighted works."  Epstein Drangel responded the same day, March 16, 2022 and provided deposit materials for the Squishmallows Works, along with the link to Plaintiff's website for reference.

80.     On January 6, 2023, the Court entered the Preliminary Injunction Order ("PI Order").

81.     On the same day, January 6, 2023, in accordance with the alternative methods of service authorized by the TRO Epstein Drangel served the PI Order on Alibaba Group.

82.     In January of 2023, Epstein Drangel discovered that Alibaba Group failed to restrain Defendants' Merchant Storefronts on Alibaba and AliExpress in violation of the TRO and PI Order and as a direct result, the following twenty (20) Merchant Defendants were being permitted to continue to sell Counterfeit Products: Dongguan Jun Ou Toys Co., Ltd., Dongguan Yikang Plush Toys Co., Ltd., Dongguan Yourun Toys Ltd., Hangzhou Baixin Im.& Exp. Co., Ltd., Joeanno Toy Factory Store, Giselle toys Store, Qingdao Qunze Toys Co., Ltd., Shenzhen Siruiqi Electronic Commerce Co. LTD,

Shijiazhuang Joyce Technology Co., Ltd., Shop1100006046 Store, Shop1102174373 Store, Taizhou Wotong International Trading Co., Ltd., Wuhn Tknow Toys Co., Ltd., Xiamen Hotitem Technology Co., Ltd., Yangzhou Alijia Plush Toys Co., Ltd., Yangzhou Jinrunan Maternity & Baby Products Co., Ltd., Yangzhou Step Toys & Gifts Co., Ltd., Yiwu Leo Trading Co., Ltd., Yiwu Qiba Trading Firm and Yoocour Speciality Store.

83.     Despite the TRO and PI Order entered in this Action, Alibaba Group continues to provide services, including, without limitation marketplace, advertising, and other essential services necessary for counterfeiters like Merchant Defendants to sell their Counterfeit Products to customers in the United States to the above-referenced twenty (20) Merchant Defendants, among others, thereby allowing them to sell Counterfeit Products.

84.     In its May 6, 2014, Form F-1, Alibaba Group stated that merchants "rely on our platform for a range of essential support services to operate their businesses."[25]  Among other essential services, Alibaba Group provides "[w]eb based and mobile interfaces to manage listings, orders and customer relationship as well as cloud computing services for their enterprise resource planning…and client relationship management…"

85.     The Form F-1 further states that Alibaba Group's "data analytic and data management capabilities allow us to anticipate buyer needs and tailor product offering displays, matching buyers with the most relevant merchants."[26]  Alibaba Group helps its merchants, including Merchant Defendants, attract customers by maintaining databases containing "transactional and user behavior data generated on [the Alibaba Group] marketplaces" that allow Alibaba Group to "construct a powerful

---

[25] Alibaba Group Holding Limited Form F-1 Registration Statement, filed with the United States Securities and Exchange Commission on May 6, 2014 ("F-1"), available at https://www.sec.gov/Archives/edgar/data/1577552/000119312514341794/d709111df1a.htm, at p. 138.
[26] F-1 at p. 137.

search engine that generates personalized results."[27]    Alibaba Group uses this technology to "continuously improve the effectiveness of [their] online marketing services for [the Alibaba Group's] sellers through the use of aggregated behavioral targeting data and analytics."[28]

86.    Alibaba Group's targeted marketing services include, for example, identifying "Top Ranking" products on the Alibaba homepage.    When visiting the Alibaba homepage, https://www.alibaba.com, there are highlighted sections prominently displayed including, but not limited to, "New arrivals", "Top-ranking" products, "Customizable products" and "Ready-to-ship products".

87.    Currently, the Alibaba homepage features Counterfeit Products in two of the prominently featured categories of "New arrivals" and "Top-ranking" as displayed below:



---

[27] F-1 at p. 169.
[28] *Id.*

88.     Alibaba Group's targeted marketing service also recommends and promotes additional Counterfeit Products to consumers when viewing one of the Merchant Defendants' Infringing Listings, as depicted below:



89.     A search for one of the Squishmallows Marks on the Alibaba Platforms yields search results wherein Counterfeit Products are prominently sponsored, without any indication that such Counterfeit Products are not authentic.  For example, when typing "Squishmallows" into the search bar on Alibaba, the below results appear, each of which are Infringing Listings for Counterfeit Products, and which features Counterfeit Products emanating from Hebei Yerong Trading Co., Ltd. ("Hebei Yerong") in the sponsored banner.





90.     Despite the fact that Hebei Yerong is not authorized to sell Squishmallows Products and is offering for sale and selling Counterfeit Products, and was named a defendant in *Squishmallows IV*, Alibaba Group is currently prominently promoting this manufacturer's Merchant Storefront and denotes Hebei Yerong as a "Verified" merchant as depicted below:



91.     Certain merchants on Alibaba are listed as "Verified" or "Assessed Suppliers".

92.     Alibaba Group states on Alibaba that "Verified Supplier is the membership tier for high-quality suppliers on Alibaba.com. This exclusive designation is meant to create more trust amongst buyers."   The "Verified Supplier" designation also allows these suppliers to become "4 of 5 star suppliers and receive a traffic boost on featured products for 6 months…They also receive 60 showcase spots to boost product listings in the search results."[29]

93.     According to Alibaba Group, "Assessed Suppliers" are suppliers verified by "the world's leading inspection companies" including Bureau Veritas, TuV SuD, SGS and TuV Rheinland.[30]

---

[29] *What is a verified Supplier on Alibaba.com?*, ALIBABA.COM (Aug. 29, 2022) https://seller.alibaba.com/businessblogs/px001z0dr-what-is-a-verified-supplier-on-alibabacom.
[30] *Assessed Suppliers*, ALIBABA.COM https://activities.alibaba.com/alibaba/about_assessed_supplier.php?spm=5386.1599790.1998355790.11.nxtJam&tracelog=home_vs_sa (last accessed Feb. 1, 2023).

94.    "Verified" suppliers Merchant Storefronts contain a video and photographs taken at their factories, which note "Verified by Alibaba" at the top left corner.

95.    In Hebei Yerong's verification video, one of Hebei Yerong's employees is shown manufacturing a Counterfeit Product, as depicted below:[31]



96.    Several Merchant Defendants named in this action are "Verified" suppliers on Alibaba, including but not limited to, Dongguan Binfa Toys Co., Ltd. and Dongguan Yikang Plush Toys Co., Ltd. ("Dongguan Yikang").

---

[31]    The verification video for Hebei Yerong can be accessed here: https://hebeiyerong.en.alibaba.com/company_profile.html?spm=a2700.shop_index.88.26.



97.     Dongguan Yikang is designated as a "Verified" supplier and thus, has received the promotional benefits of said designation, despite Epstein Drangel notifying Alibaba Group's counsel that Dongguan Yikang is a repeat infringer in May of 2022.

98.     As of January 31, 2023, Dongguan Yikang is further still offering Counterfeit Products for sale despite: (1) Plaintiff naming Dongguan Yikang in a Previous Action making it subject to  the temporary restraining order and preliminary injunction order in *Squishmallows II*; (2) Epstein Drangel notifying Alibaba Group's counsel that Dongguan Yikang is a repeat counterfeiter in May of 2022; (3) Dongguan Yikang being named in this Action, and subject to the TRO and PI Order issued herein; and (4) Plaintiff specifically using Dongguan Yikang as an example in its Motion to Compel, which has been served on the Alibaba Group and its outside counsel pursuant to the Court's January 25, 2023 Order.



99.    As of January 2023, a search for "Squishmallows" on Alibaba yields 18 pages of results, with each page containing over forty (40) Infringing Listings for Counterfeit Products.

100.    Upon information and belief, Alibaba Group has sold, and continues to sell, keywords to counterfeiters, including Merchant Defendants, comprised of Plaintiff's Squishmallows Marks. These keywords have assisted counterfeiters, including Merchant Defendants, in attracting consumers to their Infringing Listings for Counterfeit Products.

101.    When one of the Infringing Listings is clicked, Alibaba Group additionally promotes other merchants' Counterfeit Products under a header "You may also like":



102.    In addition to providing the Merchant Defendants with the services necessary to operate their Merchant Storefronts and sell Counterfeit Products in violation of the TRO and PI Order, Alibaba Group also promotes Counterfeit Products via daily email advertisements.   Below are screenshots exemplifying such promotional emails, each from January 2023, featuring Counterfeit Products:





103.    Despite Plaintiff's efforts in bringing specific egregious counterfeiters, who are repeat offenders in violation of the Alibaba Group's own Three-Strike policies to Alibaba Group's attention along with filing six (6) lawsuits, Alibaba Group has failed, and refused, to restrain Merchant Defendants' Merchant Storefronts and instead, has knowingly continued to provide its services which are essential to Merchant Defendants' continued infringing and counterfeiting activities, to such Merchant Defendants.

104.    Alibaba Group has allowed and encouraged numerous counterfeiters, including but not limited to the Merchant Defendants herein, to continue to operate on the Alibaba Platforms, even after Alibaba Group was expressly, specifically and repeatedly informed that specific merchants, including several Merchant Defendants, were selling Counterfeit Products.

105.    In addition, Alibaba Group, through AliPay, also processes payments for the sale of products, including Counterfeit Products, on the Alibaba Platforms.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**(Trademark Counterfeiting Against Merchant Defendants)**
**[15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15**
**U.S.C. § 1117(b)-(c)/Lanham Act § 35]**

106.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

107.    Plaintiff is the exclusive owner of all right and title to the Squishmallows Marks.

108.    Plaintiff and its predecessor have continuously used the Squishmallows Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

109.    Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its Squishmallows Marks and with knowledge that Merchant Defendants' Counterfeit Products bear counterfeit marks, the Merchant Defendants intentionally reproduced, copied and/or colorably imitated the Squishmallows Marks and/or used spurious designations that are identical with, or indistinguishable from, the Squishmallows Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

110.    Merchant Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Squishmallows Marks through their participation in such activities.

111.    Merchant Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the Squishmallows Marks to packaging, point-of-purchase materials,

32

promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Merchant Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Merchant Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

112. Merchant Defendants' unauthorized use of the Squishmallows Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff or its authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Squishmallows Marks.

113. Merchant Defendants' actions constitute willful counterfeiting of the Squishmallows Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

114. As a direct and proximate result of Merchant Defendants' illegal actions alleged herein, Merchant Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiff, its business, its reputation and its valuable rights in and to the Squishmallows Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Merchant Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Squishmallows Marks.

115. Based on Merchant Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a

result of Merchant Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Merchant Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION

**(Infringement of Registered Trademarks Against Merchant Defendants)**
**[15 U.S.C. § 1114/Lanham Act § 32(a)]**

116.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

117.    Plaintiff and its predecessor have continuously used the Squishmallows Marks in interstate commerce since on or before the dates of first use as reflected in the Squishmallows Registrations attached hereto as **Exhibit B**.

118.    Plaintiff, as owner of all right, title and interest in and to the Squishmallows Marks and Squishmallows Registrations, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

119.    Merchant Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the federal trademark registrations for the Squishmallows Marks.

120.    Merchant Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiff, as the registered trademark owner of the Squishmallows Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell the Squishmallows Products and/or related products bearing the Squishmallows Marks into the stream of commerce.

121.    Merchant Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit

Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the Squishmallows Marks and/or which are identical or confusingly similar to the Squishmallows Marks.

122.    Merchant Defendants knowingly and intentionally reproduced, copied and colorably imitated the Squishmallows Marks and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Merchant Defendants' Counterfeit Products.

123.    Merchant Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of all rights in and to the Squishmallows Marks.

124.    Merchant Defendants' egregious and intentional use of the Squishmallows Marks in commerce on or in connection with Merchant Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Merchant Defendants' Counterfeit Products are Plaintiff's Squishmallows Products or are otherwise associated with, or authorized by, Plaintiff.

125.    Merchant Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Squishmallows Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

126.    Merchant Defendants' continued, knowing, and intentional use of the Squishmallows Marks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered Squishmallows Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

127.    As a direct and proximate result of Merchant Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Squishmallows Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Merchant Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and the valuable Squishmallows Marks.

128.    Based on Merchant Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Merchant Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Merchant Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

<u>**THIRD CAUSE OF ACTION**</u>
**(Infringement of Unregistered Trademark Against Merchant Defendants)**
**[15 U.S.C. § 1125/Lanham Act § 43(a)]**

129.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

130.    Plaintiff and its predecessor have continuously used the Squishmallows Marks in interstate commerce since on or before the date of first use as reflected in the Squishmallows Application attached hereto as **Exhibit B**.

131.    Plaintiff, as the owner of all right, title and interest in and to the Squishmallows Marks and Squishmallows Application, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1125.

132.    Merchant Defendants were, at the time they engaged in their actions as alleged herein,

actually aware that Plaintiff is the owner of the Squishmallows Marks.

133.    Merchant Defendants did not seek, and therefore necessarily failed, to obtain consent or authorization from Plaintiff, as the trademark owner of the Squishmallows Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell Squishmallows Products and/or related products bearing the Squishmallows Marks into the stream of commerce.

134.    Merchant Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products bearing and/or utilizing marks that are reproductions, copies and/or colorable imitations of the Squishmallows Marks and/or which are identical or confusingly similar to the Squishmallows Marks.

135.    Merchant Defendants knowingly and intentionally reproduced, copied and colorably imitated the Squishmallows Marks and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Merchant Defendants' Counterfeit Products.

136.    Merchant Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of all rights in and to the Squishmallows Marks.

137.    Merchant Defendants' egregious and intentional use of the Squishmallows Marks in commerce on or in connection with Merchant Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Merchant Defendants' Counterfeit Products are

Squishmallows Products or are otherwise associated with or authorized by Plaintiff.

138.    Merchant Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Squishmallows Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

139.    Merchant Defendants' continued, knowing and intentional use of the Squishmallows Marks without Plaintiff's consent or authorization constitutes intentional infringement of the Squishmallows Marks in violation of §43 of the Lanham Act, 15 U.S.C. § 1125.

140.    As a direct and proximate result of Merchant Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Squishmallows Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately enjoined, Merchant Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Squishmallows Marks.

141.    Based on Merchant Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained and will sustain as a result of Merchant Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Merchant Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117 and 1118, and reasonable attorneys' fees and costs.

## **FOURTH CAUSE OF ACTION**

**(False Designation of Origin, Passing Off & Unfair Competition Against Merchant Defendants)**
**[15 U.S.C. § 1125(a)/Lanham Act § 43(a)]**

142.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

143.    Plaintiff, as the owner of all right, title and interest in and to the Squishmallows Marks has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

144.    The Squishmallows Marks are inherently distinctive and/or have acquired distinctiveness.

145.    Merchant Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly similar to, and constitute reproductions of the Squishmallows Marks and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Merchant Defendants' substandard Counterfeit Products are Squishmallows Products or related products, and/or that Merchant Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Merchant Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Counterfeit Products, and allowing Merchant Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the Squishmallows Marks, to Merchant Defendants' substantial profit in blatant disregard of Plaintiff's rights.

146.    By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiff's Squishmallows Products using marks that are identical and/or confusingly similar to, or which constitute colorable imitations of the Squishmallows Marks, Merchant Defendants have traded off the

extensive goodwill of Plaintiff and its Squishmallows Products and did in fact induce, and intend to, and will continue to induce customers to purchase Merchant Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiff. Such conduct has permitted and will continue to permit Merchant Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and its Squishmallows Marks, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

147.    Merchant Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or confusingly similar to and constitute reproductions of the Squishmallows Marks would cause confusion, mistake or deception among purchasers, users and the public.

148.    Upon information and belief, Merchant Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation Plaintiff, its Squishmallows Products and Squishmallows Marks.

149.    As a direct and proximate result of Merchant Defendants' aforementioned actions, Merchant Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its Squishmallows Products and by depriving Plaintiff of the value of its Squishmallows Marks as commercial assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Merchant Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of the Squishmallows Marks.

150.    Based on Merchant Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including

damages that Plaintiff has sustained and will sustain as a result of Merchant Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Merchant Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

## FIFTH CAUSE OF ACTION

### (Direct Federal Copyright Infringement Against Merchant Defendants)
### [17 U.S.C. § 501(a)]

151.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

152.    Plaintiff is the exclusive owner of the Squishmallows Works.

153.    Merchant Defendants had actual notice of Plaintiff's exclusive rights in and to the Squishmallows Works.

154.    Merchant Defendants did not attempt and therefore inherently failed to obtain Plaintiff's consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform and/or market Plaintiff's Squishmallows Products and/or Squishmallows Works.

155.    Without permission, Merchant Defendants knowingly and intentionally reproduced, copied, and displayed the Squishmallows Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling infringing products which bear such Squishmallows Works, or artwork that is, at a minimum, substantially similar to the Squishmallows Works.

156.    Merchant Defendants' unlawful and willful actions as alleged herein constitute infringement of the Squishmallows Works, including Plaintiff's exclusive rights to reproduce, distribute and/or sell such Squishmallows Works in violation of 17 U.S.C. § 501(a).

157.    Merchant Defendants' knowing and intentional copyright infringement, as alleged herein, has caused substantial and irreparable harm to Plaintiff in an amount as yet unknown but to be

41

proven at trial, for which Plaintiff has no adequate remedy at law, and unless enjoined, Merchant Defendants will continue to cause, substantial and irreparable harm to Plaintiff.

158.    Based on the Merchant Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief, Plaintiff's actual damages and Merchant Defendants' profits in an amount to be proven at trial and enhanced discretionary damages for willful copyright infringement, and reasonable attorneys' fees and costs.

## SIXTH CAUSE OF ACTION

### (Unfair Competition Against Merchant Defendants)
### [New York Common Law]

159.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

160.    By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, Defendants have traded off the extensive goodwill of Plaintiff and its Squishmallows Products to induce, and did induce and intend and will continue to induce, customers to purchase their Counterfeit Products, thereby directly competing with Plaintiff.  Such conduct has permitted and will continue to permit Merchant Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

161.    Merchant Defendants' advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of the Merchant Defendants' Counterfeit Products.

162.    Merchant Defendants knew, or by the exercise of reasonable care should have known,

that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the public.

163.    Upon information and belief, Merchant Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff, and its competitive position while benefiting Merchant Defendants.

164.    As a direct and proximate result of Merchant Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its Squishmallows Products in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law, and Plaintiff has been and will continue to be deprived of the value of its Squishmallows Marks and Squishmallows Works as commercial assets in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

165.    As a result of Merchant Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Merchant Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Merchant Defendants' intentional misconduct.

## SEVENTH CAUSE OF ACTION

**(Contributory Trademark Infringement and Counterfeiting Under the Lanham Act)**
**(Against Alibaba Group)**

166.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

167.    Plaintiff is the exclusive owner of all right and title to the Squishmallows Marks.

168.    Plaintiff and its predecessor have continually used the Squishmallows Marks in interstate

commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

169.    Without Plaintiff's permission, authorization or consent, Merchant Defendants and other merchants on the Alibaba Platforms have knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products on the Alibaba Platforms, among other channels of trade, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of Plaintiff's Squishmallows Marks and/or which are identical or confusingly similar to Plaintiff's Squishmallows Marks.  As a result, and as detailed above, the Merchant Defendants are liable for direct trademark infringement of the Squishmallows Marks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114 and willful counterfeiting of the Squishmallows Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

170.    Plaintiff and Epstein Drangel specifically put Alibaba Group on repeated notice of Plaintiff's Squishmallows Products, Squishmallows Marks and Squishmallows Works in the Prior Actions.

171.    In April and May of 2022, Epstein Drangel specifically identified over fifty-five (55) Defendants (named in this Action and in the Prior Actions) who had violated three (3) or more temporary restraining orders entered by this Court.

172.    Plaintiff served the TRO and PI Order entered in this Action on Alibaba Group on November 14, 2022 and January 6, 2023, respectively.

173.    With full knowledge (constructive through Plaintiff's federal registrations and actual through Plaintiff and Epstein Drangel's efforts listed above and the Prior Actions) of Plaintiff's rights in the Squishmallows Marks and the goodwill associated therewith, the Alibaba Group has encouraged,

enabled, facilitated, participated in and/or materially contributed to the Merchant Defendants' illegal, infringing and/or counterfeiting activities by providing their Alibaba Platforms and Alibaba services, which include, without limitation: shipping, marketing, advertising, payment processing, and other essential services, and have generated significant income directly from the Merchant Defendants' and other merchants' illegal, infringing and counterfeiting activities which include, without limitation, the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

174.    Alibaba Group had and/or has actual knowledge of Merchant Defendants' and other merchants' illegal infringing and counterfeiting activities through, among other notice: the Prior Actions brought by Plaintiff, Plaintiff and Epstein Drangel's communications with Alibaba Group and Alibaba Group's outside counsel (including the specific identification of repeat counterfeiters, including certain Merchant Defendants), the TRO and PI Order entered in this Action, the widespread press coverage of the rampant counterfeiting and infringing activities occurring on the Alibaba Platforms and actions taken by multiple brands to curtail the infringement and counterfeiting occurring on the Alibaba Platforms, which collectively put Alibaba Group on notice of specific Counterfeit Products and/or Infringing Listings therefor and of Counterfeit Products and/or Infringing Listings and/or other listings that will infringe in the future, and/or Alibaba Group was, and is, as a provider of essential services relating to the Alibaba Platforms, in the unique position of having sufficient information to identify Counterfeit Products as well as merchants, including the Merchant Defendants responsible therefor, with specificity, and to control and monitor Merchant Defendants' and other merchants' listings.

175.    Despite overwhelming notice and knowledge of the Merchant Defendants' and other merchants' illegal, infringing and counterfeiting activities, of particular Counterfeit Products and/or

Infringing Listings and of Counterfeit Products and/or listings that will infringe in the future, as well as of its own encouragement, enabling, facilitation, participation in and/or material contribution to the same, Alibaba Group has deliberately or recklessly disregarded such notifications and/or such illegal, infringing and counterfeiting activities, and/or has otherwise been willfully blind to and/or consciously avoided learning about, the full extent of the such illegal, infringing and counterfeiting activities occurring on the Alibaba Platforms and/or declined to exercise its right and ability to stop the same.

176.    By providing  essential services relating to the Alibaba Platforms to the Merchant Defendants and other merchants, Alibaba Group supplied and controlled, and continues to supply and control, the instrumentality for the Merchant Defendants' and other merchants' infringing and counterfeiting activities, including the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products, and Alibaba Group received a direct financial benefit from providing such services.

177.    Alibaba Group's egregious, knowing and intentional contribution to the Merchant Defendants' and other merchants' illegal, infringing and counterfeiting activities alleged herein has caused, and is likely to continue to cause, actual confusion, to cause mistake and to deceive the general purchasing public as to the source, origin or sponsorship of the Counterfeit Products, and is likely to deceive the public into believing that the Counterfeit Products sold by the Merchant Defendants and other merchants on the Alibaba Platforms are Plaintiff's Squishmallows Products or are otherwise associated with, or authorized by, Plaintiff, all to the damage and detriment of Plaintiff's reputation, goodwill and sales.

178.    Alibaba Group is therefore contributorily liable for the infringement and counterfeiting of Plaintiff's Squishmallows Marks by the Merchant Defendants and other merchants on the Alibaba Platforms, which have used, and are continuing to use, Alibaba Group's services, such as marketing,

shipping and payment processing services, in connection with their manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

179.    Alibaba Group's continuing egregious, knowing and intentional contribution to the Merchant Defendants' and other merchants' illegal, infringing and counterfeiting activities herein constitutes intentional contributory infringement of the federally registered Squishmallows Marks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114 and willful contributory counterfeiting of Plaintiff's Squishmallows Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), 1117(b)-(c), and 1125(a).

180.    As a direct and proximate result of the Alibaba Group's egregious, knowing and intentional actions alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and valuable rights in and to Plaintiff's Squishmallows Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately enjoined, Alibaba Group will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Plaintiff's Squishmallows Marks.

181.    Based on Alibaba Group's actions alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of the same, and all gains, profits and advantages obtained by Alibaba Group as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorney's fees and costs.

**EIGHTH CAUSE OF ACTION**

**(Contributory Copyright Infringement Against Alibaba Group)**

182.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

183.    Without Plaintiff's permission, authorization or consent, Merchant Defendants and other merchants on the Alibaba Platforms have knowingly and intentionally reproduced, copied and displayed Plaintiff's Squishmallows Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products on the Alibaba Platforms, which bear Plaintiff's Squishmallows Works, or designs or artwork that are, at a minimum, substantially similar to Plaintiff's Squishmallows Works, or otherwise use Plaintiff's Squishmallows Works, or designs or artwork that are, at a minimum, substantially similar thereto, in connection therewith. As a result, such Merchant Defendants and other merchants on the Alibaba Platforms are liable for direct copyright infringement of Plaintiff's Squishmallows Works under 17 U.S.C. § 501(a).

184.    With full knowledge (constructive through Plaintiff's federal registrations and actual through Plaintiff and Epstein Drangel's efforts listed above and the Prior Actions), of Plaintiff's rights in Plaintiff's Squishmallows Works, Alibaba Group has induced, encouraged, enabled, facilitated, participated in and/or materially contributed to Merchant Defendants' and other merchants' unlawful and infringing activities by providing the Alibaba Platforms and Alibaba Group's services relating thereto,  such as shipping, marketing, advertising, payment processing, and other essential services, and has generated significant income directly from Merchant Defendants' and other merchants' unlawful and infringing activities.

185.    Alibaba Group had, and currently has, actual and constructive knowledge of the Merchant Defendants' and other merchants' unlawful and infringing activities through, among other notice: the Prior Actions brought by Plaintiff, Plaintiff and Epstein Drangel's communications with

Alibaba Group and Alibaba Group's outside counsel (including the specific identification of repeat counterfeiters), the TRO and PI Order entered in this Action, the widespread press coverage of the rampant counterfeiting and infringing activities occurring on the Alibaba Platforms and actions taken by multiple brands to curtail the infringement and counterfeiting occurring on the Alibaba Platforms, which collectively put Alibaba Group on notice of specific Counterfeit Products and/or Infringing Listings therefor and of Counterfeit Products and/or Infringing Listings and/or other listings that will infringe in the future, and/or Alibaba Group was, and is, in the unique position of having sufficient information to identify Counterfeit Products as well as merchants, including the Merchant Defendants responsible therefor, with specificity, and to control and monitor the Merchant Defendants' and other merchants' listings.

186.    Despite overwhelming notice and knowledge of the Merchant Defendants' and other merchants' illegal, infringing activities, as well as of its own inducement, encouragement, enabling, facilitation, participation in and/or material contribution to the same, Alibaba Group has deliberately or recklessly disregarded such notifications and/or such illegal, infringing and counterfeiting activities, and/or has otherwise been willfully blind to and/or consciously avoided learning about, the full extent of the such illegal, infringing and counterfeiting activities occurring on the Alibaba Platforms  and/or declined to exercise its right and ability to stop the same.

187.    By providing critical services —services without which Merchant Defendants and other merchants on the Alibaba Platforms could not advertise, market, promote, distribute, display, offer for sale and/or sell Counterfeit Products on the Alibaba Platforms—to the Merchant Defendants, and encouraging and incentivizing the use of the Alibaba Platforms by Merchant Defendants and other merchants, Alibaba Group induced, encouraged, enabled, facilitated, participated in and/or materially contributed to Merchant Defendants' and other merchants' unlawful and infringing activities, including

the reproduction, distribution, display, and/or sale of Counterfeit Products bearing or otherwise utilizing the Squishmallows Works, or designs or artwork that are, at a minimum, substantially similar thereto, and Alibaba Group received a direct financial benefit for providing such services.

188.    As a result of the foregoing, Alibaba Group is contributorily liable for the infringement of Plaintiff's Squishmallows Works by Merchant Defendants and other merchants on the Alibaba Platforms that use Alibaba Group's services in connection with their reproduction, distribution, and/or display of the Squishmallows Works, or designs or artwork that are, at a minimum, substantially similar thereto, and/or sale of Counterfeit Products bearing or otherwise utilizing the Squishmallows Works, or works that are substantially similar thereto.

189.    As a direct and proximate result of Alibaba Group's willful, knowing and intentional contributory copyright infringement alleged herein, Plaintiff has suffered substantial, immediate and irreparable harm in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless enjoined, Alibaba Group will continue to cause such substantial, immediate and irreparable harm, loss and damage to Plaintiff.

190.    Based on the Alibaba Group's unlawful and infringing actions alleged herein, Plaintiff is entitled to injunctive relief 17 U.S.C. § 502, Plaintiff's actual damages and Alibaba Group's profits in an amount to be proven at trial infringement pursuant to 17 U.S.C. § 504(b) or at Plaintiff's election, statutory damages pursuant to 17 U.S.C. § 504(c) and enhanced discretionary damages for willful copyright infringement, and reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505.

## NINTH CAUSE OF ACTION

### (Vicarious Copyright Infringement Against Alibaba Group)

191.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

192.    Without Plaintiff's permission, authorization or consent, Merchant Defendants and other merchants on the Alibaba Platforms have knowingly and intentionally reproduced, copied and displayed Plaintiff's Squishmallows Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products on the Alibaba Platforms, which bear Plaintiff's Squishmallows Works, or designs or artwork that are, at a minimum, substantially similar to Plaintiff's Squishmallows Works, or otherwise use Plaintiff's Squishmallows Works, or designs or artwork that are, at a minimum, substantially similar thereto, in connection therewith. As a result, such Merchant Defendants and other merchants on the Alibaba Platforms are liable for direct copyright infringement of Plaintiff's Squishmallows Works under 17 U.S.C. § 501(a).

193.    Through its agreements with Merchant Defendants and otherwise as a result of carrying out its services relating to the Alibaba Platforms—services without which Merchant Defendants and other merchants on the Alibaba Platforms could not advertise, market, promote, distribute, display, offer for sale and/or sell Counterfeit Products on the Alibaba Platforms—Alibaba Group had the legal right and ability to control and supervise the Merchant Defendants' and other merchants' unlawful and infringing activities occurring on the Alibaba Platforms and the Alibaba Group was, and is, in the unique position of having sufficient information to identify Counterfeit Products bearing the Squishmallows Works, or designs or artwork that are, at a minimum, substantially similar thereto, and/or Infringing Listings and/or advertisements therefor using the Squishmallows Works, or designs or artwork that are, at a minimum, substantially similar thereto, and the Merchant Defendants, and other merchants responsible therefor, with specificity, and to control and monitor the Merchant Defendants' and other merchants' listings.

194.    Despite having such a right and ability to control and supervise Merchant Defendants' and other merchants' infringing activities occurring on the Alibaba Platforms, and/or committed with

the aid of Alibaba's Group's essential services, Alibaba Group either refused and/or failed to exercise its right and ability to stop or limit Merchant Defendants' and other merchants' unlawful infringing activities, and as a direct and proximate result of Alibaba Group's failure to do the same, Merchant Defendants and other merchants are continuing to infringe Plaintiff's Squishmallows Works.

195.    Alibaba Group has derived, and continues to derive, direct and substantial financial benefits directly from Merchant Defendants' and other merchants' unlawful and infringing activities.

196.    As a result of the foregoing, Alibaba Group is vicariously liable for the infringement of Plaintiff's Squishmallows Works by Merchant Defendants and other merchants on the Alibaba Platforms that use Alibaba Group's services in connection with their manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products, which bear Plaintiff's Squishmallows Works, or designs or artwork that are, at a minimum, substantially similar to Plaintiff's Squishmallows Works, and/or use Plaintiff's Squishmallows Works, or designs or artwork that are, at a minimum, substantially similar thereto, in connection therewith.

197.    As a direct and proximate result of Alibaba Group's willful, knowing and intentional vicarious copyright infringement alleged herein, Plaintiff has suffered substantial, immediate and irreparable harm in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless enjoined, Alibaba Group will continue to cause such substantial, immediate and irreparable harm, loss and damage to Plaintiff.

198.    Based on Alibaba Group's unlawful and infringing actions alleged herein, Plaintiff is entitled to injunctive relief 17 U.S.C. § 502, Plaintiff's actual damages and Alibaba Group's profits in an amount to be proven at trial infringement pursuant to 17 U.S.C. § 504(b) or at Plaintiff's election,

statutory damages pursuant to 17 U.S.C. § 504(c) and enhanced discretionary damages for willful

copyright infringement, and reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of

them, as follows:

A.    For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. §

1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3) and treble damages

in the amount of a sum equal to three (3) times such profits or damages, whichever is greater,

pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally, directly or indirectly using a

mark or designation, knowing such mark or designation is a counterfeit mark in violation of

15 U.S.C. § 1114(1)(a);

B.    In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced

discretionary damages and treble damages for willful use of a counterfeit mark in connection

with the sale, offering for sale or distribution of goods or services and/or for the willful

encouragement, enabling, facilitation, participation in and/or material contribution to such

use, for statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of not more

than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or

distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of

final judgment;

C.    For an award of Defendants' profits and Plaintiff's damages in an amount to be

proven at trial for willful trademark infringement and/or contributory trademark infringement

of Plaintiff's federally registered Squishmallows Marks, and such other compensatory

damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.    For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. §

1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.      For an award of Plaintiff's actual damages and Defendants' profits, pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial for willful copyright infringement, contributory copyright infringement and/or vicarious copyright infringement of the Squishmallows Works under 17 U.S.C. § 501(a);

F.      In the alternative to Plaintiff's actual damages and Defendants' profits for copyright infringement, contributory copyright infringement and/or vicarious copyright infringement of the Squishmallows Works pursuant to 17 U.S.C. § 504(b), for statutory damages of up to $150,000 per infringement pursuant to 17 U.S.C. § 504(c) for willful copyright infringement, which Plaintiff may elect prior to the rendering of final judgment;

G.      For an award of damages to be proven at trial for common law unfair competition;

H.      For a preliminary and permanent injunction by this Court enjoining and prohibiting all Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

        i.   manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

        ii.  directly or indirectly infringing in any manner any of Plaintiff's Squishmallows Marks and Squishmallows Works;

iii.   using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Squishmallows Marks and Squishmallows Works, to identify any goods or services not authorized by Plaintiff;

iv.   using any of Plaintiff's Squishmallows Marks or Squishmallows Works, or any other marks or artwork that are confusingly or substantially similar to the Squishmallows Marks or Squishmallows Works, on or in connection with Defendants' manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale, sale and/or otherwise dealing in the Counterfeit Products;

v.   using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiff;

vi.   engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii.   engaging in any other actions that constitute unfair competition with Plaintiff;

viii.   engaging in any other act in derogation of Plaintiff's rights;

ix.   from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to Merchant User Accounts or Merchant Storefronts, Merchant Defendants' Assets from or to Merchant Defendants' Financial Accounts and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

x.   from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of Merchant Defendants' Assets from or Merchant Defendants' Financial Accounts until further ordered by this Court;

xi.   effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any final judgment or order in this action;

xii.   providing services to Defendants, Defendants' Merchant User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' Merchant User Accounts and Merchant Storefronts; and

xiii.   instructing any other person or entity to engage or perform any of the activities referred to in subparagraphs (i) through (xii) above; and

I.   For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials

in the possession, custody or control of such distributors and retailers that infringe any of Plaintiff's Squishmallows Marks or Squishmallows Works, or bear any marks and/or artwork that are confusingly or substantially similar to the Squishmallows Marks or Squishmallows Works;

J.      For an order of the Court requiring that Defendants deliver up for destruction to Plaintiff any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Plaintiff's Squishmallows Marks or Squishmallows Works, or bear any marks and/or artwork that are confusingly or substantially similar to the Squishmallows Marks or Squishmallows Works pursuant to 15 U.S.C. § 1118;

K.      For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Counterfeit Products as described herein, including prejudgment interest;

L.      For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

M.      For an award of exemplary or punitive damages in an amount to be determined by the Court;

N.      For Plaintiff's reasonable attorneys' fees;

O.      For all costs of suit; and

P.      For such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all claims.

Dated: February 3, 2023                        Respectfully submitted,

                                              EPSTEIN DRANGEL LLP

                                   BY:    *Danielle Futterman*
                                         Danielle S. Futterman (DY 4228)
                                         dfutterman@ipcounselors.com
                                         Jason M. Drangel (JD 7204)
                                         jdrangel@ipcounselors.com
                                         Ashly E. Sands (AS 7715)
                                         asands@ipcounselors.com
                                         Gabriela N. Nastasi
                                         gnastasi@ipcounselors.com
                                         60 East 42nd Street, Suite 1250
                                         New York, NY 10165
                                         Telephone:    (212) 292-5390
                                         Facsimile:    (212) 292-5391
                                         *Attorneys for Plaintiff*
                                         *Kelly Toys Holdings, LLC*