```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
KELLY TOYS HOLDINGS, LLC,                                         :
                                                                  :
                                Plaintiff,                        :
                                                                  :       22-CV-9384 (JMF)
                -v-                                               :
                                                                  :       OPINION AND ORDER
19885566 STORE, et al.,                                           :
                                                                  :
                                Defendants.                       :
                                                                  :
------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

Plaintiff Kelly Toys Holdings, LLC ("Kelly Toys"), a major toy manufacturer, brought this case to prevent approximately ninety e-commerce merchants from selling counterfeits of one of its most popular toys, Squishmallows. *See* ECF No 18 ("TRO"), ¶¶ 1, 3, 14. Defendants sold their products on online platforms, including Alibaba and AliExpress (collectively, "Alibaba"). *Id.* ¶ 14. On December 13, 2022, the Court granted an *ex parte* temporary restraining order, *see* ECF No. 18, and, later, granted a preliminary injunction, *see* ECF No. 22 ("PI"). Like the TRO, the PI barred Defendants from, among other things, selling or marketing counterfeit Squishmallows. *See* TRO ¶ I.A; PI ¶ 1(a). In addition, and more relevant here, the TRO and PI enjoined certain third-party service providers, including Alibaba, from aiding or abetting Defendants in violating the injunction or from disposing of Defendants' assets or records. TRO ¶ I.B; PI ¶ 1(b). The two orders also directed third-party service providers to shut down Defendants' e-commerce user accounts and merchant storefronts. TRO ¶ I.C; PI ¶ 1(c).

Kelly Toys served the TRO and the PI on Alibaba. *See* ECF No. 26 ("Pl.'s Mem."), at 3. Shortly thereafter, Alibaba partially complied with the injunctions, taking down at least some of Defendants' infringing listings and freezing Defendants' assets. *Id.* Significantly, however,

Alibaba refused to comply with the TRO and PI to the extent that they ordered Alibaba to fully shut down Defendants' storefronts. *Id.* Moreover, since the Court entered the PI, Kelly Toys has identified more than twenty Defendants that have re-listed counterfeit Squishmallows on Alibaba. ECF No. 25 ("Futterman Decl."), ¶¶ 13-14; ECF No. 55 ("Sands Decl."), ¶¶ 11, 44. In the same period, Kelly Toys's counsel also received promotional emails from Alibaba advertising a counterfeit Squishmallow. *Id.* ¶¶ 19, 22-23, 27; Futterman Decl. ¶ 25. As a result, Kelly Toys moves for a Court order directing Alibaba to comply with the TRO and the PI or, in the alternative, holding Alibaba in contempt for its failure to comply. Pl.'s Mem. 8. For the reasons that follow, Kelly Toys's motion is GRANTED in part and DENIED in part.

## DISCUSSION

There is no dispute that Alibaba failed to fully comply with the TRO and PI; the only question is whether it should be ordered to do so now or held in contempt for its failure. Alibaba advances several arguments in opposition to Kelly Toys's motion. First, Alibaba contends that the TRO and PI fail to name the proper legal entity; as a result, it argues, the Court cannot determine whether it has personal jurisdiction over Alibaba and therefore cannot hold Alibaba in contempt. ECF No. 51 ("Alibaba Opp'n"), at 6-7. Second, Alibaba argues that it is not in active concert or participation with the Defendants and, thus, cannot be bound by the injunctions in the TRO or PI. *Id.* at 7-13. Finally, Alibaba contends that the full shut-down order in the TRO and PI is overbroad and should not be enforced. *Id.* at 13-22.

The Court will address each of these arguments in turn.

**A. Failure to Name a Legal Entity**

The TRO and the PI both define "third party service providers" to include Alibaba and AliExpress; Alibaba and AliExpress are defined, in turn, as Alibaba.com and AliExpress.com,

respectively, and identified as online marketplace platforms that enable merchants to advertise and sell products around the world. *See* TRO at ii, iv; PI at iv-vi. Alibaba contends that neither Alibaba.com nor AliExpress.com is an actual corporate entity; instead, they are "e-commerce platforms." Alibaba Opp'n 6. Because the orders do not name a cognizable legal entity, Alibaba continues, the Court cannot assert personal jurisdiction over these non-entities and the injunction cannot be binding on them. *Id.* at 6-7. This argument is without merit.

First, any error appears to be one of "mislabeling the right defendant" rather than naming the wrong defendant, *Datskow v. Teledyne, Inc., Cont'l Prod. Div.*, 899 F.2d 1298, 1301 (2d Cir. 1990), and, as Kelly Toys points out, ECF No. 56 ("Pl.'s Reply"), at 1-3, Alibaba cannot claim prejudice. It is undisputed that Alibaba had notice of the TRO and the PI. *See* Pl.'s Mem. 3; Alibaba Opp'n 3. In both orders, Kelly Toys expressly defined Alibaba and AliExpress, identifying the e-commerce platforms and the conduct at issue. TRO at ii; PI at iv. On top of that, Alibaba itself is arguably the source of any confusion. In its communications with law firms, including Kelly Toys's counsel, Alibaba explicitly refers to "AliExpress.com" and "Alibaba.com" sellers, suggesting that these are cognizable entities. *See, e.g.*, ECF No. 25-2, at 7; ECF No. 55-1, at 2. In short, given that Kelly Toys identified the platforms at issue using the names Alibaba itself provided, Alibaba cannot now credibly claim to have been prejudiced. *See, e.g., Datskow*, 899 F.2d at 1301-02 (holding that, although the plaintiffs named the incorrect entity as a defendant, they "sufficiently alerted" the correct defendant "that it was the corporation being sued" because they clearly identified the conduct at issue and because the defendant had several related entities with similar names); *see also, e.g., Moonbug Ent. Ltd. v. Autumn Sell*, No. 21-CV-10328 (NRB), 2023 WL 2051247, at *5 (S.D.N.Y. Feb. 16, 2023) (holding that an error

in naming a defendant on a summons did not prejudice the defendant because it received actual notice of the lawsuit and because the defendant intentionally obfuscated its correct name).

Second, and in any event, the TRO and PI bind *all* third-party service providers that act in active concert and participation with Defendants. TRO ¶¶ I.B, I.C; PI ¶¶ 1(b), 1(c); *see also* Fed. R. Civ. P. 65(d)(2)(C) (injunctions bind "other persons who are in active concert or participation" with the parties, as long as they receive actual notice of the injunction). Thus, to the extent that any Alibaba entity had notice of the injunction and acted in active concert or participation with the enjoined Defendants — an issue the Court discusses in greater detail below — then that entity was bound by the injunction, whether or not it was identified by name. *Cf. NML Cap., Ltd. v. Argentina*, 727 F.3d 230, 239 (2d Cir. 2013) ("[T]hrough the automatic operation of Federal Rule of Civil Procedure 65(d), [injunctions] . . . bind . . . persons who are in active concert or participation with [the defendant]." (cleaned up)).

Finally, Alibaba's personal jurisdiction challenge, to the extent it makes a challenge at all, fails. Alibaba first states that the Court cannot conduct a personal jurisdiction analysis for non-entities, including Alibaba.com and AliExpress.com. Alibaba Opp'n 6-7. In light of the foregoing, however, this argument is without merit. Next, Alibaba contends, in a footnote, that the Court lacks personal jurisdiction over Alibaba Group Holding, Inc. ("AGHL"), an entity that Kelly Toys later added as an additional Defendant to this case. *Id.* at 7 n.2. By relegating this argument to a footnote, however, Alibaba has arguably waived it. *See, e.g.*, *City of Philadelphia v. Bank of Am. Corp.*, 498 F. Supp. 3d 516, 537 (S.D.N.Y. 2020).

In any event, the Court concludes that it has personal jurisdiction over the operators of Alibaba.com and AliExpress.com.[1]  Courts, including the Second Circuit, "have adapted the test for civil defendants . . . in assessing . . . whether they may properly exercise jurisdiction over a nonparty."  *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 136-37 (2d Cir. 2014).  Under N.Y. C.P.L.R. § 302(a)(1), "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state."  That is sufficient to support personal jurisdiction here.  Alibaba.com and AliExpress.com are "interactive" websites that enable Defendants and other companies to sell and ship counterfeit products to consumers in New York.  *See* ECF No. 6 ("Compl."), ¶ 25; *see also Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 251-52 (2d Cir. 2007) (explaining that a website's "interactivity" is relevant to assessing whether the defendant "transacts any business" in the forum state).  Consumers can navigate on Alibaba's website, as Kelly Toys's counsel did; find counterfeit Squishmallow products; and order them to New York.  *See id.* ¶ 37; ECF No. 6-4; Sands Decl. ¶ 33.  This is sufficient to meet the "single act" requirement of Section 302(a)(1).  *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) (noting that the "single act of shipping a counterfeit" product may be enough to satisfy personal jurisdiction); *see also Gucci Am., Inc. v. Frontline Processing Corp.*,

---

[1]  Kelly Toys's argument that the Court has personal jurisdiction over Alibaba by virtue of the fact that Alibaba aided and abetted violations of the injunction is undermined by binding Second Circuit precedent.  *See Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.*, 869 F.2d 34, 40 (2d Cir. 1989) ("A district court cannot exercise personal jurisdiction over a nonparty to a litigation, on the basis that the nonparty is acting 'in active concert or participation,' within the meaning of Fed. R. Civ. P. 65(d), with a party who is subject to an injunction, unless personal jurisdiction is established over the nonparty."); *Gucci Am.*, 768 F.3d at 134 (2d Cir. 2014) ("[A] district court can enforce an injunction against a nonparty . . . only if it has personal jurisdiction over that nonparty.").  At least in the Second Circuit, the question of whether the Court has personal jurisdiction over Alibaba is therefore distinct from the question of whether Alibaba aided and abetted violations of the injunction.

721 F. Supp. 2d 228, 242-43 (S.D.N.Y. 2010) (holding, under N.Y. C.P.L.R. § 302(a)(3)(ii), which Kelly Toys also invokes, Compl. ¶ 3, that the court could exercise personal jurisdiction over out-of-state credit card processing services because they provide services to companies that sold infringing products into New York). And Kelly Toys's trademark infringement claims, and its claim that Alibaba has violated the injunction, undoubtedly arise out of Alibaba's contacts with New York. *See Licci ex rel Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 169 (2d Cir. 2013); *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 169, 166 (2d Cir. 2010).

Nor would the exercise of personal jurisdiction over Alibaba violate due process. *See, e.g.*, *Licci*, 732 F.3d at 169-70. In light of, among other things, the emails Alibaba sent Kelly Toys's counsel advertising counterfeit Squishmallows, Sands Decl. ¶ 33, the Court has little trouble concluding that this is not one of the "rare" cases in which jurisdiction is proper under Section 302(a)(1) but nevertheless violates due process. *Licci*, 732 F.3d at 170; *see also Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188 (JMF), 2020 WL 7388654, at *2 (S.D.N.Y. Dec. 16, 2020) (relying on email correspondence to support its conclusion that the exercise of personal jurisdiction over a foreign corporation shows that the corporation "purposefully availed itself of the privilege of doing business in the forum" (internal quotation marks omitted)). Moreover, requiring Alibaba to respond to Kelly Toys's motion in this District "'does not offend traditional notions of fair play and substantial justice.'" *Licci*, 732 F.3d at 169 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Accordingly, the Court concludes that it has personal jurisdiction over Alibaba.

## B. Active Concert and Participation

Next, Alibaba argues that it cannot be bound by the injunction in the TRO or PI because it is not in "active concert or participation" with Defendants. Alibaba Opp'n 7. As noted above,

all injunctions bind both the parties to the injunction and nonparties in active concert or participation with the bound party.  *See* Fed. R. Civ. P. 65(d)(2)(c); *see also NML Cap., Ltd.*, 727 F.3d at 243; *Gucci Am., Inc.*, 768 F.3d at 130.  This derives from the well-established principle that a third party cannot aid or abet an enjoined party's violation of an injunction.  *See, e.g.*, *Next Invs., LLC v. Bank of China*, 12 F.4th 119, 134 (2d Cir. 2021).

To establish that Alibaba is in active concert or participation with the enjoined Defendants, Kelly Toys must show that Alibaba aided and abetted a violation of the injunction, which in turn "requires showing that the non-party had actual knowledge of the judicial decree and violated it, and that the challenged action was taken for the benefit of, or to assist, a party subject to the decree." *Arista Recs., LLC v. Tkach*, 122 F. Supp. 3d 32, 36 (S.D.N.Y. 2015) (cleaned up).  In determining whether Alibaba acted to benefit or assist any enjoined Defendants, the Court must assess "the actuality of concert or participation, without regard to the motives that prompt the concert or participation." *N.Y. State Nat'l Org. for Women v. Terry*, 961 F.2d 390, 397 (2d Cir. 1992), *vacated on other grounds Pearson v. Planned Parenthood Margaret Sanger Clinic*, 507 U.S. 901 (1993).

Here, it is undisputed the Alibaba had notice of the preliminary injunction, *see* Pl.'s Mem. 3, and the Court has no trouble concluding that Alibaba was in active concert or participation with enjoined Defendants, aiding and abetting them in violating the injunction.  Indeed, Kelly Toys provides several examples of Alibaba's conduct that benefitted or assisted Defendants in marketing and selling counterfeit Squishmallows, all of which post-date the PI.  First, Kelly Toys shows that Alibaba marketed infringing Squishmallow products on its platform and through sponsored Google advertisements even after the Court entered the PI.  Sands Decl. ¶¶ 33, 35-37.  In addition, several enjoined Defendants relisted infringing Squishmallow

products on Alibaba even after the Court entered the PI.  Futterman Decl. ¶¶ 13-14; Sands Decl. ¶¶ 11, 44, 48.[2]  Many of the Defendants that relisted infringing products also receive premium membership services from Alibaba.  Sands Decl. ¶¶ 12, 29, 34.  This means that Alibaba provided "comprehensive ways" for these Defendants "to promote their products," *Id.* ¶ 13, including the infringing products.  And finally, even after the Court entered the preliminary injunction, Kelly Toys's counsel received a promotional email from Alibaba advertising counterfeit Squishmallow products and was subsequently contacted by one of the Defendants regarding these same products.  *Id.* ¶¶ 23-24, 27; Futterman Decl. ¶ 25.[3]

Put simply, Alibaba assisted Kelly Toys in selling infringing Squishmallow products in spite of the injunction.  For comparison, in *Arista Records, LLC*, Judge Nathan found that a third-party internet service provider had acted in active concert with an enjoined defendant, a website operator, because the third party permitted the defendant to register an infringing domain

---

[2]     In a supplemental declaration filed on May 22, 2023, Alibaba corrected an error in its prior declaration and noted that it took down the allegedly infringing listing Defendant Yoocour Specialty Store's storefronts, which Kelly Toys had identified in the Futterman Declaration. ECF No. 93, ¶ 4.  That point still stands.

[3]     Alibaba moved to strike the Sands Declaration and arguments raised for the first time in reply, arguing that were improper.  *See* ECF No. 60.  The Court denied Alibaba's motion with the understanding that it would not consider any arguments made for the first time in the reply papers.  *See* ECF No. 62.  To the extent that the Sands Declaration raises new factual allegations, they are not critical to the Court's analysis; to the contrary, the Futterman Declaration submitted with Kelly Toys's opening brief stated that more than twenty Defendants had re-listed infringing products and that Kelly Toys's counsel had received a promotional email from Alibaba advertising counterfeit Squishmallows.  Futterman Decl. ¶¶ 13-14, 25.  Meanwhile, Alibaba's argument that it should not be held responsible for the email advertisements because they are automatically generated by an algorithm, *see* Alibaba Opp'n 12-13; ECF No. 52, ¶ 5, is not persuasive.  Alibaba's motive or intent is not relevant.  *See Terry*, 961 F.2d at 397.  Instead, the relevant inquiry is whether the email advertisements demonstrate the "actuality of concert or participation."  *Id.*  They plainly do.  Alibaba's email advertisements were one way in which Defendants promoted counterfeit Squishmallows after the Court entered the injunction. Alibaba's services — including its email advertising services — were thus being "knowingly used to facilitate injunction violations."  *Arista Records, LLC*, 122 F. Supp. 3d at 36.

name after the court enjoined the defendant from doing just that. 122 F. Supp. 3d at 37. Judge Nathan rejected the internet service provider's argument that it simply gave the same services to the infringing website as it would give to any other website, reasoning that its motives were irrelevant in determining active concert or participation. *Id.* Here, similarly, Alibaba provided many of the enjoined Defendants with premium services, enabling them to relist counterfeit Squishmallow products. Under the logic of *Arista Records*, that alone would be sufficient to show active concert or participation. But there is more. Alibaba's sponsored advertisements and promotional emails to Kelly Toys's counsel provide further evidence that it is in active concert with enjoined Defendants, aiding and abetting them in violating the injunction.

The cases Alibaba cites to the contrary are inapposite. *See* Alibaba Opp'n 8-11. In *Blockowicz v. Williams*, 630 F.3d 563 (7th Cir. 2010), the Seventh Circuit concluded that a website host had not aided and abetted the enjoined defendants by failing to remove defamatory comments because "mere inactivity is simply inadequate to render them aiders and abettors in violating the injunction." *Id.* at 568. But Alibaba has gone far beyond "mere inactivity"; it has taken several affirmative steps to assist the enjoined Defendants. Several of the other cases Alibaba cites were in a fundamentally different procedural posture — determining the scope of an injunction *ex ante* rather than assessing *ex post* whether a third-party had aided and abetted a violation of the injunction. *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 638 (S.D.N.Y. 2018); *ONE11 Imports Inc. v. NuOp LLC*, No. 16-CV-7197 (JPO), 2016 WL 7338422, at *2 (S.D.N.Y. Dec. 19, 2016). Indeed, many of the cases Alibaba cites merely stand for the proposition that third-party service providers like Alibaba are not bound by an injunction if they are not in active concert and participation with the defendants. *See* Alibaba Opp'n 11. But Kelly Toys has now shown that Alibaba is in active concert and participation

with Defendants insofar as it has advertised and promoted Defendants' counterfeit products and provided the services necessary to allow Defendants to relist counterfeit products.

Alibaba's advertising activities in particular distinguish this case from *Kelly Toys Holdings, LLC v. Alialialill Store*, 21-CV-8434 (AKH) (S.D.N.Y. May 31, 2023), in which Judge Hellerstein recently entered an order denying a similar motion — an order on which Alibaba relies also here, *see* ECF No. 97-1.  There, Judge Hellerstein refused to hold Alibaba and AliExpress in contempt, concluding that the plaintiff had "failed to demonstrate that Alibaba and AliExpress [were] in 'active concert or participation with' the enjoined Defendants" because they had "promptly removed all infringing listings by Defendants when notified by Plaintiff" and because the plaintiff had not identified any other conduct by Alibaba and AliExpress that supported a finding of active concert and participation.  *Id.* at 3.  Here, by contrast, Kelly Toys does identify affirmative conduct by Alibaba — promoting counterfeit Squishmallows through sponsored advertisements and email to consumers.  This conduct provides a sufficient basis to show that it is in active concert and participation with Defendants.

Accordingly, Kelly Toys may enforce the injunction against Alibaba.

## C.  Overbreadth of the Injunction

Third, and most substantial, Alibaba contends that the injunction — and in particular, the full shut-down order — is overbroad and, thus, cannot be enforced against it.  Alibaba Opp'n 13-22.  On the one hand, that argument is hard to swallow in this posture, as Alibaba chose to flout the Court's orders rather than challenge them or seek their modification.[4]  It is for that reason that, as a general matter, an argument challenging the validity of an injunction "has no place in a

---

[4]  Notably, the Court directed Alibaba to address whether it could challenge the scope of the injunction in this posture, *see* ECF No. 48, at 16, but it failed to do so, *see* Pl.'s Reply 7-8.

10

contempt proceeding." *N.A. Sales Co. v. Chapman Indus. Corp.*, 736 F.2d 854, 857 (2d Cir. 1984); *see also Maggio v. Zeitz*, 333 U.S. 56, 69 (1948) ("It would be a disservice to the law if we were to depart from the long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy."); *United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947) ("[A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.").

At the same time, a court cannot "bind the world at large through a broadly worded injunction." *Vuitton et Fils S. A. v. Carousel Handbags*, 592 F.2d 126, 129 (2d Cir. 1979). Indeed, if an injunction purports to bind the independent conduct of nonparties, then "the persons enjoined are free to ignore it." *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir. 1930) (Learned Hand, J.). Accordingly, as Judge Hand explained nearly a century ago, "the only occasion when a person not a party [to an injunction] may be punished, is when he has helped to bring about, not merely what the decree has forbidden, because it may have gone too far, but what *it has power to forbid*, an act of a party." *Id.* at 833 (emphasis added). In light of that equally well-established principle, the Court concludes that Alibaba may challenge the scope of the injunction to the extent it went beyond what the Court "ha[d] the power to forbid." *Id.*

And here, the full shut-down order directed at Alibaba and other third-party service providers did exceed the Court's authority. "Because a court's power to enjoin is limited to the conduct of a party, it is the relationship between the party enjoined and the nonparty that determines the permissible scope of an injunction." *Paramount Pictures Corp. v. Carol Pub. Grp., Inc.*, 25 F. Supp. 2d 372, 374 (S.D.N.Y. 1998). That is, the Court could enjoin Alibaba's conduct only to the extent that it was aiding and abetting a named Defendant in violating the

11

injunction. Crucially, neither the TRO nor the PI ordered Defendants to stop operating their user accounts or storefronts. The full shut-down order directed at nonparties was therefore unconnected from any of Defendants' conduct that the Court had enjoined. Because the Court lacks the authority to enjoin the independent actions of a nonparty, *see Alemite Mfg. Corp.*, 42 F.2d at 833; *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 380-81 (S.D.N.Y 2020), it could not direct Alibaba to shut down Defendants' storefronts.

As a result, the Court cannot hold Alibaba in contempt for failing to comply with the full shut-down order. *N. Face Apparel Corp. v. Fujian Sharing Imp. & Exp. LTD. Co.*, No. 10-CV-1630 (AKH), 2011 WL 12908845 (S.D.N.Y. June 24, 2011), is particularly instructive. There, Judge Hellerstein had previously entered an injunction directing a nonparty, Public Interest Registry, to "take down" the defendants' websites, which infringed on the plaintiff's domain name. *Id.* at *2. Judge Hellerstein concluded that he "lacked the authority to order Public Interest Registry affirmatively to act, i.e., to disable or otherwise render inactive defendants' infringing domain names." *Id.* As a result, Judge Hellerstein could not hold Public Interest Registry in contempt "for having failed to do what [the court] lacked the authority to require it to do in the first instance." *Id.* The same analysis applies here. Alibaba cannot now be held in contempt for refusing to do that which the Court could not order it to do.

Indeed, following the principle from Judge Hand's decision in *Alemite*, the Second Circuit has since confirmed that, to hold a nonparty in contempt for aiding and abetting a violation of the injunction, as Kelly Toys seeks to do, a plaintiff must establish "(1) that *the party* subject to the court's mandate committed contempt; and (2) that [the nonparty] assisted the enjoined party." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) (emphasis added); *see also Matrix Essentials v. Quality King Distributors, Inc.*, 346 F. Supp. 2d 384, 392

(E.D.N.Y. 2004) ("[A] non-party who is alleged to have acted in concert to aid and abet a violation of an injunction can be held in contempt only upon the 'predicate' finding that the enjoined party has violated the order."). Here, because the full shut-down order enjoined the conduct of only nonparties, the Court cannot make the necessary predicate finding that *Defendants* violated the injunction by keeping their storefronts active. And without that predicate finding, Alibaba cannot be held in contempt for violating the full shut down order.[5]

That said, Alibaba *has* aided and abetted Defendants' violations of other sections of the injunction and, thus, can be held in contempt for that conduct. To impose civil contempt, "a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Gucci Am., Inc.*, 768 F.3d at 142 (internal quotation marks omitted). Alibaba does not dispute that the injunctions in the TRO and PI, other than the full shut-down order, were clear and unambiguous. And, as discussed above, Kelly Toys has established that Alibaba provided the services necessary for at least twenty Defendants to re-list counterfeit Squishmallows and promoted Defendants' counterfeit Squishmallows through emails and sponsored advertisements. Pl.'s Reply 4-5; Futterman Decl. ¶¶ 13-15; Sands Decl. ¶¶ 11-13, 19, 22-24, 27, 29, 33-36. While it is undisputed that Alibaba

---

[5] In light of the Court's conclusion that it lacked the authority to impose the full shut-down order against Alibaba, it need not and does not wade into the growing debate over whether a full shut-down order is appropriate more generally. *See, e.g.*, *Spin Master Ltd*, 463 F. Supp. 3d at 381-82 (finding that a full shut-down order in a proposed permanent injunction was overbroad); *Allstar Mktg. Grp., LLC v. AFACAI*, No. 20-CV-8406 (JPC), 2021 WL 2555636, at *4 (S.D.N.Y. June 22, 2021) (holding that a full shut-down order would prevent the defendants from selling goods "even where such sales do not run afoul of federal law"). There is considerable merit in these criticisms of full shut-down orders. Indeed, in a case involving the same Plaintiffs' counsel, this Court recently struck a full shut-down order from a proposed permanent injunction because it "unduly burden[ed] the . . . [d]efendants' lawful activities." *DKH Retail Ltd. v. 2814218764*, No. 22-CV-7848 (JMF), 2023 WL 3948846, at *2 (S.D.N.Y June 12, 2023).

has taken some steps to comply by restraining Defendants' assets and removing infringing listings, *see* Pl.'s Mem. 3; Alibaba Opp'n 5, these steps alone do not establish that Alibaba has been diligently attempting to comply with the injunction. By contrast, Alibaba's actions in promoting Squishmallows through emails and sponsored advertisements establish the exact opposite — that Alibaba is affirmatively assisting Defendants in violating the injunction.

Thus, contempt is warranted for that conduct. Although Kelly Toys moved for contempt, it did not request that a particular sanction be imposed. *See* Pl.'s Mem. 8. Civil contempt sanctions serve two main functions: "to coerce future compliance and to remedy past noncompliance." *Vuitton et Fils S.A.*, 592 F.2d at 130; *see also Powell v. Ward*, 643 F.2d 924, 931 (2d Cir. 1981). Compensatory sanctions may include attorney's fees and other related costs where the contempt is willful. *See, e.g.*, *N.A. Sales Co. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d. Cir. 1984). "Willful contempt is one where the contemnor had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply." *Skyline Steel, LLC v. PilePro, LLC*, No. 13-CV-8171 (JMF), 2018 WL 6025863, at *1 (S.D.N.Y. Nov. 16, 2018) (cleaned up). Here, because Alibaba had notice of the Court's injunction, clearly could have complied with it, did not seek to have it modified until after Kelly Toys moved for contempt, and did not make a good-faith effort to comply insofar as it subsequently took affirmative steps to aid and abet Defendants' infringement, the Court concludes that compensatory sanctions are justified. When a fine "is compensatory in purpose," however, "the sanction should correspond at least to some degree with the amount of damages." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.* 369 F.3d 643, 658 (2d Cir. 2004). Accordingly, the Court orders Alibaba to reimburse Kelly Toys for all fees and costs relating to the present motion. *See Skyline Steel*, 2018 WL 6025863, at *2.

**CONCLUSION**

For the foregoing reasons, Kelly Toys's motion is GRANTED in part and DENIED in part. Alibaba is directed to comply with the injunction in the PI, except as modified below. Alibaba is further directed to reimburse Kelly Toys for the fees and costs it incurred in connection with this motion. To that end, within **two weeks of the date of this Opinion and Order**, Kelly Toys shall submit an accounting of its relevant attorneys' fees and costs, supported by contemporaneous billing records. Alibaba may file any response within **three weeks of the date of this Opinion and Order.** No reply may be filed absent leave of Court.

In light of the Court's discussion of the full shut-down order, and its conclusion that it lacked authority to include it in the injunction, the Court will **not** order Alibaba to take down Defendants' storefronts. Accordingly, **Section 1(c) of the PI is hereby stricken**. Kelly Toys may move to modify the injunction in line with this Opinion and Order, although it should be mindful that any injunction must be narrowly tailored and cannot enjoin lawful conduct. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144-45 (2d Cir. 2011); *Waldman Publishing Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994).

In future cases of this nature, Kelly Toys's counsel is warned that the Court is unlikely to approve its standard proposed TRO language without fact-specific justification. In future cases before this Court, counsel should also (1) address the propriety of joinder of so many defendants in a single case; and (2) cite to this Opinion and Order and others by the undersigned in justifying the injunctive relief requested. To that end, the Court urges counsel in future cases to await assignment of a district judge upon the filing of a complaint before moving for a TRO so that counsel can reference the assigned district judge's relevant prior rulings.

Finally, Plaintiff is directed to submit a letter within **two weeks of the date of this Opinion and Order** updating the Court on the status of its negotiations with the non-Alibaba Defendants.

The Clerk of Court is directed to terminate ECF No. 24.

SO ORDERED.

Dated: June 29, 2023
New York, New York

_____
JESSE M. FURMAN
United States District Judge