UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
---------------------------------------------------------------------X
                                                    :
KELLY TOYS HOLDINGS LLC,                            :
                                                    :
                          Plaintiff,                :
                                                    :              22-CV-9384 (JMF)
             -v-                                     :
                                                    :          MEMORANDUM OPINION
19885566 STORE et al.,                              :                AND ORDER
                                                    :
                          Defendants.               :
                                                    :
---------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

In this case, familiarity with which is assumed, Plaintiff Kelly Toys Holdings LLC

("Kelly Toys") sues e-commerce merchants ("Merchant Defendants") that are allegedly selling

counterfeits of one of its most popular toy lines, Squishmallows, as well as online platforms on

which the Merchant Defendants sell their products, including Alibaba and AliExpress

(collectively, the "Alibaba Defendants"). *See* ECF No. 72. Shortly after the case was filed, the

Court entered a Temporary Restraining Order ("TRO") and, later, a Preliminary Injunction

("PI"). *See* ECF Nos. 18, 22. As relevant here, they enjoined certain third-party service

providers, including the Alibaba Defendants, from aiding or abetting Merchant Defendants in

violating the injunction. On June 29, 2023, the Court issued an Opinion and Order, ECF No.

101, granting in part and denying in part Kelly Toys's motion to direct the Alibaba Defendants to

comply with the TRO and the PI or, in the alternative, holding the Alibaba Defendants in

contempt for their failure to comply. *See Kelly Toys Holdings, LLC v. 19885566 Store*, No. 22-

CV-9384 (JMF), 2023 WL 4288356 (S.D.N.Y. June 29, 2023). The Court directed the Alibaba

Defendants to comply with the preliminary injunction — subject to a modification not relevant

here — and held them in contempt for "affirmatively assisting [Merchant] Defendants in

violating the injunction." *Id.* at *7.  The Alibaba Defendants now move for reconsideration of the Court's ruling to the extent that it held them in contempt.  ECF No. 104.

It is well established that "[t]he decision to grant or deny a motion for reconsideration . . . is in the sound discretion of a district court judge." *Wechsler v. Hunt Health Sys., Ltd.*, 186 F. Supp. 2d 402, 410 (S.D.N.Y. 2002) (internal quotation marks omitted).  The rules permitting motions for reconsideration must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the [C]ourt." *United States v. Treacy*, No. 8-CR-366 (RLC), 2009 WL 47496, at *1 (S.D.N.Y. Jan. 8, 2009). Nevertheless, reconsideration may be granted where the moving party points to matters that "might reasonably be expected to alter the conclusion reached by the [C]ourt." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

Applying these standards here, the Court concludes that reconsideration is warranted.  As the Court noted in its earlier Opinion and Order, "[t]o establish that [the] Alibaba [Defendants are] in active concert or participation with the enjoined Defendants, Kelly Toys" had to "show that [the] Alibaba [Defendants] aided and abetted a violation of the injunction, which in turn 'requires showing that the non-party had actual knowledge of the judicial decree and violated it, and that the challenged action was taken for the benefit of, or to assist, a party subject to the decree.'" 2023 WL 4288356, at *4 (quoting *Arista Recs., LLC v. Tkach*, 122 F. Supp. 3d 32, 36 (S.D.N.Y. 2015)); *see also id.* at *4 n.3 (observing that the Alibaba Defendants' services must have been "knowingly used to facilitate injunction violations" (quoting *Arista Recs.*, 122 F. Supp. 3d at 36)).  In the analysis that followed, however, the Court paid insufficient heed to the requirement that Kelly Toys provide proof of the Alibaba Defendants' knowledge.

This deficiency was illuminated by two decisions that the Court did not previously consider: *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023), decided just before the Court's Opinion and Order was entered, and *Havens v. James*, 76 F.4th 103 (2d Cir. 2023), decided after. Although not a Rule 65(d)(2)(C) case, the former addressed the standard for aiding-and-abetting liability in the context of 18 U.S.C. § 2333(d)(2), which imposes civil liability for aiding and abetting acts of international terrorism.  598 U.S. at 477-78.  The plaintiffs in that case sued Twitter, Facebook, and Google "for allegedly aiding and abetting ISIS" in connection with a deadly 2017 terrorist attack in a Turkey nightclub, on the theory that these companies "knew that ISIS was using their platforms but failed to stop it from doing so."  *Id.* at 478.  Starting with the principle that aiding and abetting generally "refers to a conscious, voluntary, and culpable participation in another's wrongdoing," *id.* at 493, the Supreme Court held that the plaintiffs' allegations — that the defendants had permitted ISIS to upload content to their platforms, used recommendation algorithms that matched content (including ISIS-related content) "to users most likely to be interested in that content," and "took insufficient steps" to remove ISIS-related content, *id.* at 498 — fell short.

Most relevant for present purposes, the Court noted that the only affirmative conduct alleged was the defendants' recommendation algorithms and that these algorithms were "merely part of [the defendants'] infrastructure" and "appear[ed] agnostic as to the nature of the content, matching any content (including ISIS' content) with any user who is more likely to view that content."  *Id.* at 499.  "The fact that some bad actors took advantage of these platforms," the Court continued, "is insufficient to state a claim that defendants *knowingly* gave substantial assistance and thereby aided and abetted those wrongdoers' acts."  *Id.* at 503 (emphasis added). At bottom, therefore, *Twitter* sharpens the distinction between the "mere creation" and

maintenance of a platform that is then used for unlawful purposes, *see id.* at 499 ("[Internet or cell service] providers would [not] normally be described as aiding and abetting, for example, illegal drug deals brokered over cell phones — even if the provider's conference-call or video-call features made the sale easier."), and circumstances in which "a platform consciously and selectively chose to promote content provided by a particular [user]" and thus "could be said to have culpably assisted the [user]," *id.* at 502; *see also id.* ("[I]n such cases, plaintiffs might be able to establish liability with a lesser showing of scienter.").

*Havens* was a Rule 65(d)(2)(C) case, albeit not one, like *Twitter*, pertaining to online platforms. *Havens* involved an injunction against certain named defendants regarding harassing activities outside abortion clinics, and the issue of when a non-defendant could be found to have acted "in active concert or participation" within the meaning of the Rule. *Id.* at 107-08. In *Havens*, the Court of Appeals clarified that, although "Rule 65(d)'s active-concert prong is 'directed to the actuality of concert or participation, without regard to the motives that prompt the concert or participation,'" *id.* at 114 (citations omitted), the inquiry as to "the actuality of concert or participation" requires that "the nonparty's 'challenged actions' were 'taken *for the benefit of, or to assist*, a party subject to the decree' *in violating the injunction*," *id.* at 115 (quoting *Arista Recs.*, 122 F. Supp. 3d at 36) (emphasis added). Thus, *Havens* underscores that a nonparty, in order to be found to have violated an injunction, must have the intent to assist a party in violating the injunction — a requirement that necessarily implies a requirement that the nonparty has knowledge of such ongoing or impending violation.

Here, as in *Twitter*, the Alibaba Defendants' acts — such as promotional emails advertising Merchant Defendants' products — are primarily if not wholly algorithmically-

generated.  *See* ECF No. 52 ("Zhao Decl."), ¶ 5.[1]  *Twitter* suggests, if not holds, that this is not

enough; Kelly Toys has to show that the Alibaba Defendants had knowledge or reason to know

that a particular merchant was either actively marketing infringing goods or intended to exploit

their algorithmic infrastructure to market infringing products.  The record before the Court on

Kelly Toys's motion for contempt did not, and does not, support a finding of such knowledge.

To the contrary, it reveals that the Alibaba Defendants promptly removed infringing listings (and

other listings from the infringing storefronts) upon being made aware of such listings.  *See* Zhao

Decl. ¶¶ 9-13.  To be sure, as the Court found in its earlier Opinion and Order, "Kelly Toys does

identify affirmative conduct by [the] Alibaba [Defendants] — promoting counterfeit

Squishmallows through sponsored advertisements and email to consumers."  2023 WL 4288356,

at *5.  But there was no evidence in the record at the time of Kelly Toys's motion showing that

the Alibaba Defendants took any affirmative acts to assist any Merchant Defendants *with*

*knowledge that these acts would be assisting infringing activity.*  The Court's contempt Order

was therefore improper under Rule 65(d)(2)(C) and must be vacated.

    To be clear, this conclusion does not grant *carte blanche* to online platforms like the

Alibaba Defendants to skirt Rule 65(d)(2)(C) on the ground that they are merely passive third

parties whose acts of facilitation or assistance are automatically or algorithmically generated.

Under different circumstances — namely, where the Alibaba Defendants have knowledge that a

Merchant Defendant is continuing to post infringing listings (because that Merchant Defendant is

in violation of the three-strikes policy or a particular infringing listing remains active despite

---

[1]     To be clear, the Zhao declaration cited herein is the declaration submitted by the Alibaba
Defendants in opposition to the motion to compel, not the declaration to which Kelly Toys
objects, *see* ECF No. 117, at 9.  The latter was submitted only in support of the Alibaba
Defendants' motion for a stay pending reconsideration — not the motion for reconsideration
itself, *see* ECF Nos. 105, 106 — and, thus, is irrelevant here.

notice, for example), but nevertheless persists in providing advertising, preferred status, or other support to that Merchant Defendant — the "active concert and participation" requirement may well be satisfied.  But here, such evidence was, and is, lacking.  To be sure, Kelly Toys did claim that the Alibaba Defendants "repeatedly ignored [their] own 'three-strike policy,'" seemingly based on their counsel having "specifically identified over fifty-five (55) merchants on Alibaba and/or AliExpress who sold counterfeit products on Alibaba even after having three (3) or more injunction orders against them" and having notified the Alibaba Defendants of the same.  *See* ECF No. 26, at 1-2 & n.1; *see also* ECF No. 25 ("Futterman Decl."), at ¶¶ 20-24.  But the motion record does not support that claim.  As the Alibaba Defendants note, "[t]emporary restraining orders and preliminary injunction orders do not generate strikes under Alibaba's repeat infringer policy," Zhao Decl. ¶ 12, and Kelly Toys repeatedly declined to use the designated process for reporting infringement that is used to generate "strikes," ECF No. 51, at 21-22.  And in any event, this question is immaterial because Kelly Toys fails to connect the purported repeat infringers to the "affirmative conduct" it attributes to the Alibaba Defendants — namely, the promotional email its counsel received.  *See* Futterman Decl. ¶ 25; Futterman Decl. Ex. I.

For the foregoing reasons, the Alibaba Defendants' motion for reconsideration is GRANTED, and the portion of the Court's June 29, 2023 Opinion and Order holding them in contempt is vacated.  Instead, the Court denies Kelly Toys's motion to hold the Alibaba Defendants in contempt.

SO ORDERED.

Dated: February 9, 2024
New York, New York

_____
JESSE M. FURMAN
United States District Judge