UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KELLY TOYS HOLDINGS, LLC,<br><br>*Plaintiff*<br><br>v.<br><br>19885566 STORE et al.,<br><br>*Defendants* | Case No. 22-cv-9384 (JMF) |

**STIPULATION AND ~~[PROPOSED]~~ ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

Plaintiff Kelly Toys Holdings, LLC ("Plaintiff") and Defendants AliExpress E-Commerce One Pte. Ltd. ("AliExpress") and Alibaba.com Singapore E-Commerce Pte. Ltd. ("Alibaba" and together, the "Alibaba Defendants") hereby stipulate to the following Order regarding electronically stored information ("ESI") in the above-captioned action.

I.   **GENERAL PRINCIPLES**

1. This Stipulation and Order may be modified in the Court's discretion or by agreement of the Parties.

2. Except as expressly stated, nothing in this Stipulation and Order affects the Parties' discovery obligations under the Federal Rules of Civil Procedure or Local Rules.

3. The production specifications set forth in this Stipulation and Order apply to Documents and ESI that are to be produced in the first instance in the above-captioned litigation. To the extent any Producing Party reproduces Documents or ESI previously produced by any Party or Non-Party during a pre-complaint investigation of the subject matter of this litigation, that Party may reproduce such Documents or ESI in the manner in which it was produced to that Party. No Party is obligated to reformat any such prior production in accordance with the production specifications in this Stipulation and Order. Prior productions are nevertheless subject

to the privilege obligations set forth in Section V of this Stipulation and Order.

## II. DEFINITIONS

The terms used in this Stipulation and Order that are also used in the Federal Rules of Civil Procedure have the same meaning that they have under the Federal Rules of Civil Procedure, unless otherwise provided in this Stipulation and Order. Whenever the terms set forth below are used in this Stipulation and Order, the following definitions apply:

a. "Custodian" means any individual, department, business unit, or division of a Party or Non-Party that has possession, custody, or control of Documents, ESI, or data sources.

b. "Custodial Data Source" means Documents or ESI kept, used, or maintained by a Custodian, including but not limited to personal computers used for business, mobile device, email server, or local archive), mobile devices (such as cellphones or tablets), individual folders on networks, cloud storage systems, social media, and documents from a shared network file (including Google Drives) if the Custodian has access to that file, except that no provision of this Stipulation and Order shall require the preservation or production of Documents or ESI that is not reasonably accessible pursuant to Section C of this Stipulation and Order.

c. "Deduplication" means the process of removing identical copies of documents during a Producing Party's review of ESI.

d. "Documents" and "Electronically Stored Information" have the same definition as set forth in Federal Rule of Civil Procedure 34.

e. "Native Format" means the file structure of a Document created by the original creating application (in contrast to a static image, which is a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems, such as .TIFF or .PDF).

f. "Non-Party" means any natural person, partnership, corporation,

association, or other legal entity not named as a Party in the above-captioned litigation.

   g. "Party" or "Parties" means one or more of the parties in the above-captioned litigation.

   h. "Producing Party" means a Party or Non-Party that produces Documents, ESI, or other information in response to a formal or informal request for production of Documents, ESI, or other information.

   i. "Requesting Party" means a Party that requests, formally or informally, the production of Documents, ESI, or other information.

   j. "Search Term" means a combination of words (including synonyms) and phrases designed to capture potentially relevant ESI, and includes strings of words and phrases joined by proximity and Boolean connectors or other syntax.

## III. PRESERVATION OF ESI

   1. <u>Materials To Be Preserved.</u> Each Party will continue to comply with its duties to preserve material under the Federal Rules of Evidence and the Federal Rules of Civil Procedure, including Federal Rule of Civil Procedure 37(e).

   2. <u>No Discovery of Material Not Required to Be Preserved.</u> Absent a showing of extraordinary circumstances, the Parties shall not seek discovery of items that need not be preserved pursuant to the paragraph below. Any discovery request seeking such information must be identified separately from discovery requests seeking other materials and must include a statement showing good cause for the discovery of such materials, considering the limitations set forth in Federal Rule of Civil Procedure 26(b)(2)(C). If any general discovery request is susceptible to a construction that calls for the production of items that need not be preserved pursuant to this Stipulation and Order, such items need not be searched for, produced, or identified on a privilege log pursuant to Rule 26(b)(5).

   3. <u>ESI That Is Not Reasonably Accessible.</u> The following categories of ESI are not reasonably accessible in this litigation:

  a. Information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonable accessible data source;

  b. Logs of calls made from cellular phones;

  c. Voicemail messages;

  d. Deleted, slack, fragmented, or other data only accessible by forensics (nothing in this order authorizes the intentional deletion of ESI after the duty arose to preserve such ESI);

  e. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

  f. Online access data such as temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

  g. Data in metadata fields that are frequently updated automatically, such as last-opened dates;

  h. Server, system or network logs;

  i. Data remaining from systems no longer in use that is unintelligible on the systems in use;

  j. Data that is not accessible through the operating system or software installed on a device; and

  k. Electronic data (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

  4. The Parties need not preserve for this litigation the categories of ESI listed in the paragraph above, unless on the date that this Stipulation and Order is entered by the Court, either Party has a policy that results in the routine preservation of such ESI, in which case such Party

shall continue to preserve such ESI in accordance with its policy.

5. Nothing in this Stipulation and Order prevents any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of Documents or ESI are not reasonably accessible.

6. <u>Preservation Does Not Affect Discoverability or Claims of Privilege.</u> By preserving Documents and ESI for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

## IV. COLLECTION AND REVIEW

1. Each Producing Party will use reasonable search methodologies to collect, review, and produce relevant and responsive, non-privileged Documents and ESI in response to requests for production.

2. <u>Search Terms.</u>

   a. If a Producing Party intends to use Search Terms to search for and identify potentially responsive Documents and ESI, then, prior to collection and review, the Producing Party shall disclose to the Requesting Party: (1) the Search Terms it intends to use; (2) the Custodial and non-Custodial Data Sources to which the Search Terms shall be applied; (3) information sufficient for the Requesting Party to assess whether the chosen Custodial and non-Custodial Data Sources are appropriate for applying such Search Terms; and (4) other disclosures reasonably necessary for the parties to meet and confer and resolve disputes related to such Search Terms (*e.g.*, document hit counts).

   b. After receipt of the Search Terms and disclosures set forth above by a Producing Party, the Requesting Party shall raise any concerns and propose any additions or modification it may have to the Search Terms. The Requesting Party shall, upon request, explain the reasoning behind its additions or modifications.

   c. The Producing Party will then either agree to the additions and/or modifications or decline to adopt them in writing. If the Producing Party declines to

accept the additions and/or modifications, it will explain its reasoning and provide any counterproposals in writing.

        d.      The Parties agree and understand that such negotiations require a cooperative and a reasonably iterative process to evaluate and agree to Search Terms. If the Parties cannot reach agreement with respect to the proposed use of Search Terms following such disclosures and negotiations, they shall bring their disputes to the Court for resolution in a timely manner.

    3.      Upon request, the Producing Party shall also disclose any categories of documents that the Producing Party collected and processed, but mass marked non-responsive or otherwise excluded without individual review.

    4.      <u>Technology Assisted Review</u>. As of the date of this Stipulation and Order, neither Party intends to use Technology Assisted Review ("TAR"), such as predictive coding, to determine whether documents are responsive or to otherwise limit the documents that it produces. If any Party or Non-Party wishes to use TAR instead of Search Terms to determine whether documents are responsive or to otherwise limit the documents that it produces, it shall notify the Requesting Party and provide it a proposed TAR protocol. The Requesting and Producing Parties shall then meet and confer in an attempt to negotiate an agreed-upon protocol. Unless otherwise ordered by the Court, a Producing Party shall not use TAR to determine whether documents are responsive or otherwise to limit the documents that it produces except in conformance with a written, agreed-upon protocol signed by counsel for the Parties.

    5.      <u>Filtering.</u>

        a.      Producing Parties must de-NIST electronic files, removing known, traceable software applications in the National Software Reference Library ("NIST List"), available at https://www.nist.gov/itl/ssd/software-quality-group/nsrl-download.

        b.      If a Producing Party proposes to apply other filters to limit ESI that is collected for processing and review (e.g., filters that identify system files, non-user

generated files, or zero-byte files), the Producing Party shall advise the Requesting Party and the Requesting and Producing Parties shall meet and confer regarding such additional proposed filters. If the Parties cannot reach agreement, they shall bring their dispute to the Court for resolution.

6. <u>Deduplication.</u>

a. A Producing Party may deduplicate electronic files during their collection and review of Documents and ESI. Data will be deduplicated vertically within each custodian and horizontally across custodians (e.g., globally) following industry standard deduplication algorithms.

b. A Producing Party will not seek to deduplicate: (1) hard copy documents; (2) "loose" electronic documents (e.g., documents located on a Custodian's local drive) against versions of the document that are attached to emails; or (3) email attachments in one family against email attachments in another family.

c. All document family groups (e.g., email attachments and embedded files) must be produced together except as limited by any claim of privilege and child files should follow parent files sequentially in document control numbering.

d. Deduplication should occur both vertically within each Custodian and horizontally across Custodians. Deduplication must be done in a way that preserves and produces (1) information on blind copy (bcc) recipients of deduplicated emails; (2) information on other Custodians whose files contain deduplicated Documents; and (3) original file path and, if applicable, the mailbox folder information.

## V. PRIVILEGE LOG AND PROCEDURES

1. The parties agree that privilege logs shall be provided 30 days after the date agreed upon for final production in this matter. The parties agree that in the first instance, the Producing Party will provide a categorical privilege log encompassing all documents over which the party claims privilege. The categorical privilege log must include the following for

documents in each category: the authors and recipients; the nature of the documents in that category; the date range of documents in that category; file types; basis for privilege claimed; and number of documents withheld within that category. To the extent the Requesting Party believes it needs further information to evaluate the privilege(s) being claimed with respect to any category in the categorical privilege log of the Producing Party, the parties shall meet and confer in good faith to reach agreement on whether and to what extent to supplement the information already provided.

2. If an email contains both privileged and non-privileged communications, the non-privileged communications must be produced, either by separately producing a copy of the non-privileged communications embedded in the privileged communication, or by producing a copy of the entire communication string with the privileged portions redacted.

3. If an email is produced with redactions, the redactions must not obscure the headers (from, to, subject, sent date) of any embedded emails, unless the identity or contact information of a person is privileged or protected.

4. With respect to privileged or work-product information generated after January 1, 2024, the parties are not required to include any such information in privilege logs.

5. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

## VI. PRODUCTION

1. <u>Procedures for Production.</u> The following procedures apply to producing Documents or ESI. Compliance with these procedures constitutes compliance with Federal Rule of Civil Procedure 34(b)(2)(E) for this matter.

   a. <u>Method.</u> Document productions shall be made via portable hard drives, or through secure file transfer protocol, FTPS (File Transfer Protocol over SSL), or similar secure or encrypted electronic transmission.

   b. <u>Format.</u> The parties agree that ESI will be produced to the requesting

party with searchable text. The parties agree that documents may be produced as either: (i) native files or (ii) single-page TIFFs (only with load files for e-discovery software that includes metadata fields identifying natural document breaks and also includes companion OCR and/or extracted text files). The unique Bates number shall be electronically branded to the lower right hand corner of TIFF images, and confidentiality designations (if applicable) shall be electronically branded to the lower left hand corner of the TIFF images so that they legibly print with the images. Extracted text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates number (e.g. the unique Bates number of the first page of the corresponding production version of the document followed by its file extension). If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document. Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database and drawing files, should be produced in native format. Each document image file shall be named with a unique Bates number (e.g., the unique Bates number of the page of the document in question, followed by its file extension). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable, the revision history.

    c.    Documents produced on paper must be organized by Custodian and maintained in the order in which they appear in the files of the Custodian.

    d.    <u>Email</u>.

        i.    If a Producing Party redacts any part of an email before producing it, OCR text may be provided in place of extracted text.

        ii.    Email attachments must be processed and produced as though they

were separate documents, contemporaneously and sequentially immediately after the parent document, and the text load file must include fields in which a Producing Party identifies, for each email, and its attachments the BegAttach and EndAttach of the family range.

    iii. All hidden text (e.g. track changes, hidden columns, hidden rows, hidden slides, hidden worksheets, mark-ups, notes) shall be expanded and rendered in the extracted text file. For files that cannot be expanded, linked native files shall be produced in addition to extracted text and images.

e. <u>Word, WordPerfect, Google Docs and PDF files</u>.

    i. For Word, Google Docs, and PDF files, the text load file must contain the full extracted text from the document, unless the document has been redacted during privilege review, in which case the load file may contain OCR text.

    ii. For Word, Google Docs, and PDF files that contain comments or tracked changes that are not part of the ordinary text, the TIFF images must be generated with the tracked changes, comments, and other similar information visible.

f. Microsoft PowerPoint and other presentation files ("Presentations") must be processed and produced as full color, half page, TIFF images with one slide per page, or in Native Format. Any presenter notes or comments must appear below each slide. The text load file must contain a field that identifies the file path of the native file corresponding to each Document. If Presentations contain privileged text that must be redacted before production, the Producing Party will image the redacted files and provide OCR text for the files. If a Presentation contains embedded Documents, those Documents must be processed and produced as

though they were separate Documents with text load files containing BegAttach and EndAttach as described above.

g. Microsoft Excel and other data spreadsheet files ("Spreadsheets") must be produced in Native Format in the Doclinks folder on the production media using the same process as for producing Presentations. The Native File shall be renamed in the following format: Bates Prefix - Bates Number - Confidentiality. If Spreadsheets contain privileged text that must be redacted before production, a Producing Party will redact the native file using a native redaction tool and produced in native format.

h. Digital photographs must be produced as full color .JPG image files at their original resolution. The JPG shall be renamed in the following format: Bates Prefix - Bates Number - Confidentiality.

i. Microsoft OneNote files, and files from programs that offer similar functionality as Microsoft OneNote, may be converted to PDF files prior to processing, review, and production. Producing Parties need not collect or produce an entire OneNote notebook if only certain sections or pages in the notebook are responsive

j. With respect to any other kinds of electronic data, including data from databases, CAD drawings, GIS data, videos, etc., a Producing Party must produce in Native Format or initiate a meet-and-confer to determine a reasonably usable form for the production. If the file is not one of the types described above, the Producing Party must provide a placeholder TIFF image that shows the name of the file and has a Bates number. If the Requesting and Producing Parties have not agreed on a production format for the ESI prior to the production, then Rule 34(b)(2)(E)(iii) shall not apply to the production

2. The Requesting Party has the option, after reviewing a black-and-white TIFF image, to enquire whether the original document contained color and, if so, to request color .JPG images.

3. Except as stated above, a Producing Party need not produce the same ESI in more than one form.

4. <u>Document Families.</u> A Producing Party may withhold small image files or extracted embedded files that are unnecessary to understand the underlying document (e.g., logos or embedded v-card), even if other documents in the same document family are responsive. A Producing Party shall not withhold documents on a claim of privilege merely because other documents in the same document family are privileged.

5. <u>Metadata fields.</u> If the Requesting Party seeks metadata, the parties agree that only the following metadata fields need be produced: Bates numbers for the first and last page of each document; for document families, the Bates number for the first page of the first document of the document family and last page for the last document of the document family; document type; custodian and duplicate custodians; author/from/last saved by; recipient/to, cc and bcc; title/subject; file name, type, extension, and size; original file path; date and time created, sent, modified and/or received, with all metadata pertaining to dates and times provided in GMT -4 (EST); hash value; confidentiality designation; and an indicator that indicates whether a document contains redactions.

SO ORDERED.

January 17, 2025

Dated: New York, New York
        January 16, 2025

Respectfully submitted,

/s/ *Jared R. Friedmann*
Jared R. Friedmann
Sarah Ryu
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
jared.friedmann@weil.com
sarah.ryu@weil.com

*Attorneys for AliExpress E-Commerce One Pte. Ltd.*

/s/ *B. Robert Liu*
B. Robert Liu
Stephen Hudspeth
**BALANCE LAW FIRM**
One World Trade Center, Suite 8500
New York, New York 10007
Telephone: (212) 741-8080

*Attorneys for Alibaba.com Singapore E-Commerce Pte. Ltd.*

Dated: New York, New York
        January 16, 2025

Respectfully submitted,

/s/ *Danielle S. Futterman*
Danielle S. Futterman
Jason M. Drangel
Ashly E. Sands
Gabriela N. Nastasi
**EPSTEIN DRANGEL LLP**
60 East 42nd Street, Suite 1250
New York, New York 10165
Telephone:  (212) 292-5390
Facsimile:  (212) 292-5391
dfutterman@ipcounselors.com
jdrangel@ipcounselors.com
asands@ipcounselors.com
gnastasi@ipcounselors.com

*Attorneys for Kelly Toys Holdings, LLC*